**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **SOUTHWEST AIRLINES CO.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:21-cv-00098** |
| | § | |
| **KIWI.COM, INC. and** | § | |
| **KIWI.COM S.R.O.,** | § | |
| | § | |
| **Defendants.** | § | |

## PLAINTIFF SOUTHWEST AIRLINES CO.'S ORIGINAL COMPLAINT

Southwest Airlines Co. ("Southwest" or "Plaintiff") files this Original Complaint against Kiwi.com, Inc. and Kiwi.com s.r.o. (collectively, "Kiwi" or "Defendants"), and shows:

### I.    NATURE OF ACTION

1.    Almost 50 years since its first flights in 1971, Southwest Airlines has grown to become one of the most-flown airlines in the United States. In peak travel seasons during 2019, Southwest operated more than 4,000 daily departures among a network of more than 100 destinations in the United States and 10 additional countries. In 2020, Southwest added service to new destinations in Hawaii, Florida, Colorado, and will soon begin service to more U.S. cities in 2021.  Southwest prides itself on offering customer-friendly policies, including its unique "Bags Fly Free" policy (each customer can check two bags for free, subject to weight and size limits) and its "No Change Fees" policy (Southwest does not charge fees to change or cancel flights, though fare differences may apply).

1

2.       Through its website at www.Southwest.com (the "Southwest Website"), Southwest offers its customers low-fare flights, along with providing ticket information, reservation details, and additional booking options for Southwest flights and ancillary services.

3.       Southwest maintains the exclusive online distribution rights to sell Southwest tickets to the general public through the Southwest Website and does not allow online travel agencies ("OTAs") to sell Southwest flights without express written approval. Southwest has long controlled access to the Southwest Website and, in doing so, prevents OTAs or travel websites from unauthorized sale of flights. Among other things, the Terms & Conditions for use of the Southwest Website expressly prohibit any attempts to "page scrape" flight data and any use of the Southwest Website "for any commercial purpose" without authorization from Southwest.[1]

4.       In the past, Southwest has successfully prosecuted actions and obtained injunctions against website operators or OTAs attempting to scrape data from the Southwest Website for commercial purposes without authorization by Southwest. *See, e.g., Southwest Airlines Co. v. Farechase, Inc.*, 318 F.Supp.2d 435 (N.D. Tex. 2004); *Southwest Airlines Co. v. BoardFirst, L.L.C.*, No. 3:06-CV-0891-B, 2007 WL 4823761, at *4-11 (N.D. Tex. Sept. 12, 2007); *Southwest Airlines Co. v. Infare Solutions A/S*, no. 3:10-cv-01674-M (N.D. Tex. 2010); *Southwest Airlines Co v. Checkinsooner.com, LLC*, 3:10-cv-01512-K (N.D. Tex. 2010).

5.       Kiwi operates an OTA business at kiwi.com that has engaged in repeated, unlawful activity on the Southwest Website, and ignored a series of cease-and-desist demands from Southwest. Kiwi's unlawful conduct includes:

   a.   **Page Scraping:** Kiwi has knowingly violated the Terms & Conditions through its unauthorized scraping of flight and pricing data from the Southwest Website;

---

[1] A true and correct copy of the Terms & Conditions is attached as Exhibit A.

    b.   **Unauthorized Sale:** Kiwi has knowingly violated the Southwest Terms by selling Southwest tickets without approval from Southwest and therefore has engaged in unauthorized commercial activity;

    c.   **Unauthorized Services:** Kiwi has knowingly violated the Southwest Terms by charging certain "service fees" that are not otherwise charged by Southwest;

    d.   **Trademark Infringement:** Kiwi has knowingly violated Southwest's registered trademarks by displaying, among other things, Southwest's famous "Heart" logo on the Kiwi site;

    e.   **Unauthorized Access:** Kiwi has violated federal and state law by continuing to access the Southwest Website without authorization from Southwest;

6.    Kiwi's conduct is unlawful, deceptive, and harmful to Southwest's customers because Kiwi misrepresents Southwest's policies and charges unsuspecting customers fees for things that are free on the Southwest Website. Such conduct not only harms the consumers, but also Southwest by eroding consumer goodwill, tarnishing and diluting Southwest's brand and trademarks, and commercializing Southwest's proprietary information without authorization.

7.    On multiple occasions since 2018, Southwest has sent Kiwi written cease-and-desist demands in emails and letters—sent to Kiwi's chief legal counsel and to Kiwi's registered agents in the United States—demanding that Kiwi stop this unlawful conduct.[2] Southwest specifically referenced the Terms & Conditions for use of the Southwest Website and even attached a copy of the Term & Conditions, pointing out examples of why Kiwi's conduct was unlawful, improper, and a violation of Southwest's legal rights.

---

[2] A true and correct copy of an email chain with cease-and-desist emails to Kiwi dated September 17, 2018, and August 28, 2019, is attached as Exhibit B, and a true and correct copy of a cease-and-desist letter to Kiwi dated December 11, 2020, is attached as Exhibit C.

8.     Kiwi received the cease-and-desist notices and responded to them with emails seeking to form a business relationship with Southwest.[3] Although Southwest made it very clear that it has no interest in forming a business relationship with Kiwi and that Kiwi should immediately cease and desist its ongoing unlawful, deceptive, and harmful conduct, Kiwi has ignored those demands. Instead, Kiwi has provided Southwest reports detailing its commercial use of the Southwest Website through a purported Kiwi account representative.[4]

9.     Southwest sent a final cease-and-desist letter to Kiwi on December 11, 2020, but Kiwi again has refused to cease its unlawful conduct. Accordingly, Southwest files this suit to enjoin Kiwi's unauthorized access to the Southwest Website, to stop the misuse and infringement of Southwest's registered trademarks, and to recover damages for Kiwi's unauthorized activities.

## II.     THE PARTIES

10.     Southwest Airlines is a Texas corporation with its principal place of business located at 2702 Love Field Drive, Dallas, Texas 75235.

11.     Defendant Kiwi.com, Inc. is a Delaware corporation with its principal place of business at 1209 Orange Street, Wilmington, Delaware 19801. Kiwi.com, Inc. may be served with process through either (a) its registered agent, Northwest Registered Agent Service, Inc., 8 The Green, Suite B, Dover, Delaware 19901; or (b) its registered agent, Northwest Registered Agent Service, Inc, 7901 4th St. N, Suite 300, St. Petersburg, Florida 33702.

---

[3] A true and correct copy of an email response from Kiwi dated September 9, 2019, is attached as Exhibit D.

[4] A true and correct copy of an email from Kiwi to Southwest dated July 14, 2020, is attached as Exhibit E.

12.     Defendant Kiwi.com, s.r.o. is a Czechoslovakian limited liability company identifying its address as Palachovo náměstí 4, 625 00 Brno, Czech Republic. Kiwi.com, s.r.o. can be served at that address.

### III.     JURISDICTION AND VENUE

13.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338 because Southwest asserts claims arising under 15 U.S.C. §§ 1114, 1116, 1117, and 1125 of the Lanham Act. This Court has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367.

14.     This Court has jurisdiction over Kiwi and this dispute pursuant to the Terms & Conditions for use of the Southwest Website, which provide as follows:

> **Forum Selection**
> **These Terms and the relationship between you and Southwest shall be governed by the laws of the State of Texas without regard to any conflict of law provisions. You agree to the personal and exclusive jurisdiction of the courts located within Dallas, TX. You hereby consent to the exclusive jurisdiction and venue of the State and Federal courts in Dallas, Texas in all disputes. You agree and understand that you will not bring against the Southwest Parties any class action lawsuit related to your access to, dealings with, or use of the Service.[5]**

15.     In addition to consenting to this Court's jurisdiction by using the Southwest Website (even after receiving multiple cease and desist notices), Kiwi has committed torts in this District, breached a contract in this District, violated Texas statutory law in this District, and systematically conducts business in this District. Kiwi has purposefully availed itself of the forum by soliciting business from Texas residents and purposefully directing its actions towards Texas,

---

[5] Ex. A, Terms & Conditions at 3 (emphasis in original).

including by offering and selling flights in Texas, and soliciting business from Southwest's commercial and marketing leadership at its headquarters in Dallas, Texas.

16.     For example, Kiwi's website offers and sells Southwest flights to airports to ten (10) Texas cities, including: Dallas (DAL), Houston (HOU), Austin (AUS), San Antonio (SAT), El Paso (ELP), Midland/Odessa (MAF), Lubbock (LBB), Amarillo (AMA), Harlingen (HLG), and Corpus Christi (CRP) (collectively, "Texas Airports").

17.     Kiwi has sold more than 19,000 Southwest tickets with an origin or destination at one of the Texas Airports.

18.     Kiwi has sold more than 1,400 Southwest reservations (for more than 1,800 passengers) that include a billing zip code in Texas.

19.     The injuries Kiwi inflicts on Southwest are felt in this District, and Kiwi knew that serious harmful effects from its conduct would occur here.

20.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the claims asserted in this action arose in this District and a substantial part of the activities, conduct and damages have occurred in Texas. During all relevant times, Kiwi repeatedly, knowingly and intentionally accessed without Southwest's authorization Southwest servers located in this judicial district. Additionally, as quoted above, pursuant to the Terms & Conditions quoted above, Kiwi consented to exclusive jurisdiction of courts in Dallas, Texas for all disputes relating to the use of the Southwest Website.

## IV.     FACTS GIVING RISE TO THIS ACTION

### A.  Southwest's Operation and Website

21.     Since its first flight in June 1971, Southwest has provided affordable flights to business and leisure passengers for almost 50 years. Southwest became the nation's largest

domestic air carrier in 2003 and, with its domestic-focused network, it continues to be one of the most-flown airlines in the United States. In peak travel seasons during 2019, Southwest operated more than 4,000 daily departures among a network of more than 100 destinations in the United States and 10 additional countries.

22.     In the highly competitive airline industry, Southwest has been successful in large measure because of Southwest's commitment to customer service and consumer loyalty, including its well-known promises of fares with "no hidden fees" and "no change fees" (though fare differences may apply).

23.     Southwest owns and operates the Southwest Website. Southwest also maintains the exclusive online distribution rights to sell Southwest tickets to the general public through the Southwest Website and does not allow online travel agencies to sell Southwest flights without express written approval. Southwest has long prevented website operators, OTAs, and travel applications from selling its flights and the Terms & Conditions for the Southwest Website include a list of Restricted Activities that prohibit attempts to "page scrape" or using the Southwest Website "for any commercial purpose" without permission from Southwest.[6]

24.     To protect the security of its website and ensure normal operations, Southwest makes its website and the proprietary contents available for consumers' use subject to the Terms & Conditions. An interactive link on each page of Southwest's website, including the homepage, references the Terms & Conditions.

25.     Because use of the Southwest Website constitutes acceptance of the Terms & Conditions, the Terms & Conditions constitutes a valid and enforceable contract between Southwest and those who access the website. Moreover, since 2018, Southwest has sent multiple

---

[6] *See* Ex. A, Terms & Conditions at 2.

cease and desist letters to Kiwi, pointing out and explaining Kiwi's violations of the Terms & Conditions, yet Kiwi has continued its unlawful conduct, including page-scraping flight data and other activities that violate the Terms & Conditions.

26.    The Terms & Conditions for use of the Southwest Website specifically prohibit, among other things, the following user conduct:

a.    Use of the Southwest Website to "copy, display, distribute, publish, re-post, reproduce, re-use, sell, transmit or use the Service or Company Information to create a derivative work;"

b.    Use of the Southwest Website or Company Information "for any commercial purpose, with the exception of authorized Southwest travel agents/agencies;"

c.    Engaging in any activity in connection with the Southwest Website or Company Information that is "fraudulent, unlawful, false or misleading . . . .";

d.    Attempts to "harvest any information from the [Southwest Website];"

e.    Attempts to "infringe any intellectual property or other right of any third party;"

f.    Use of the Southwest Website "to make any speculative, fraudulent, or false reservation or any reservation in anticipation of demand;" and

g.    "[U]se [of] any deep-link, page-scrape, robot, crawl, index, spider, macro programs, Internet agent, or other automatic device, program, algorithm or methodology which does the same things to use, access, copy, acquire information, . . . search, generate searches, or monitor any portion of the [Southwest Website] or Company Information[.]"[7]

---

[7] *See* Ex. A, Terms & Conditions at 2.

27.     The Terms & Conditions also provide that, by accessing the Southwest Website, "you also agree you will not use the [Southwest Website] for or in connection with offering any third party product or service not authorized by Southwest."[8]

**B.  Southwest's Registered Trademarks**

28.     Southwest is the owner of, among other things, the federal trademark registrations listed below (hereinafter collectively referred to as the "Southwest Marks"):[9]

| Trademark | Date | Services | No. |
|---|---|---|---|
| SOUTHWEST AIRLINES | Registered: Dec. 8, 1992 | (Int'l Class: 39) transportation services; namely, transportation of cargo and passengers by air | Reg. No.: 1,738,670 |
| SOUTHWEST | Registered: Aug. 15, 2006 | (Int'l Class: 39) Transportation of passengers and/or goods by air | Reg. No.: 3,129,737 |
| | Registered September 8, 2015 Int'l Class: 35 First Use: September 8, 2014 Filed: October 1, 2014 | (Int'l Class: 35) providing electronic on-line information services, namely, the provision of advertisements and business information in respect of travel, tourism and entertainment through a computer database; advertising services and promotion services by data communications for service providers in the travel industry; on-line direct electronic marketing services and advertising services for service providers in the travel industry; providing online information to others, namely, advertisements and solicitations | Reg. No.: 4,806,962 |

---

[8] *See* Ex. A, Terms & Conditions at 2.

[9] True and correct copies of the registrations certificates for the Southwest Marks are available free of charge from the USPTO's Trademark Electronic Search System (TESS) database available at https://www.uspto.gov/trademarks-application-process/search-trademark-database.

| Trademark | Date | Services | No. |
|---|---|---|---|
|  | Registered July 7, 2015<br>Int'l Class: 16<br>First Use: September 8, 2014<br>Filed: December 1, 2014 | (Int'l Class: 16)<br>printed matter, namely, publications, magazines, and books all featuring information about the airline and travel industry | Reg. No.: 4,768,717 |
|  | Registered April 14, 2015<br>Int'l Class: 39<br>First Use: September 8, 2014<br>Filed: September 8, 2014 | (Int'l Class: 39)<br>air transportation of passengers and freight; air transportation services featuring a frequent flyer bonus program; airline transportation services; delivery of goods by air; freight transportation by air; making reservations and bookings for transportation; making transportation bookings and reservations for others by means of a website; on-line transportation reservation and travel ticket reservation services; online transportation reservation services; providing a website featuring information in the field of air transportation; providing automated check-in and ticketing services for air travelers; transport by aircraft; transport by air; transport of passengers; transport of persons and goods; transportation of passengers and/or goods by air; travel agency services, namely, making reservations and bookings for transportation | Reg. No.: 4,720,322 |
|  | Registered April 21, 2015<br>Int'l Class: 09<br>First Use: September 8, 2014<br>Filed: September 22, 2014 | (Int'l Class: 09)<br>computer application software for mobile phones, namely, software for delivery of personalized travel information; computer e-commerce software to allow users to perform electronic business transactions via a global computer network; computer software for the delivery of personalized travel information that may be downloaded from a global computer network; downloadable mobile applications for providing personalized travel information namely flight check-in, flight status, and flight and car rental information and services; downloadable software in the nature of | Reg. No.: 4,723,791 |

| Trademark | Date | Services | No. |
|---|---|---|---|
| | | a mobile application for the delivery of personalized travel information | |
|  | Registered April 21, 2015 Int'l Class: 43 First Use: September 8, 2014 Filed: September 22, 2014 | (Int'l Class: 43) making hotel reservations for others; providing a website featuring information in the field of hotels and temporary accommodations for travelers; providing personalized information about hotels and temporary accommodations for travel via the internet | Reg. No.: 4,723,789 |
|  | Registered January 26, 2016 Int'l Class: 41 First Use: September 8, 2014 Filed: May 22, 2015 | (Int'l Class: 41) providing information on entertainment, sporting, and cultural events and venues, amusements parks, tourist attractions, and recreational activities; ticket reservation and booking services for entertainment, sporting, and cultural events and venues, amusement parks, tourist attractions, and recreational services | Reg. No.: 4,892,223 |

29.     Southwest spends substantial time, money, and effort advertising and promoting its products and services using its trademarks throughout the United States. The Southwest Marks provide Southwest with the exclusive right to use the registered marks in connection with air transportation and other travel services, as well as the right to exclude third parties from unauthorized use of the marks. Through years of nationwide and continuous use and advertisement, Southwest has established enormous goodwill with respect to these marks, and they are Southwest's valuable intellectual property. The Southwest Marks have become famous, distinctive and well known, and the public accepts the marks as indicative that Southwest is the source of those services.

**C. Kiwi's Wrongful, Unauthorized, and Misleading Conduct**

30.     Upon information and belief, both Kiwi.com s.r.o. and Kiwi.com, Inc. control and direct kiwi.com. Kiwi operates a travel website that offers, among other things, airline flights and itineraries on many U.S.-based airlines.

31.     In connection with these services, Kiwi knowingly and intentionally targets the Southwest Website to harvest Southwest's fare and pricing information for its own commercial benefit and without Southwest's authorization. Kiwi uses Southwest's information in a manner that is fraudulent, false or misleading, and that violates the Terms & Conditions of the Southwest Website

32.     On information and belief, Kiwi sold approximately 187,000 Southwest tickets between 2017 and the first half of 2020.

33.     After receiving complaints from consumers who booked Southwest flights through the Kiwi website, and upon visiting the kiwi.com website, Southwest discovered Kiwi's infringing use of Southwest's famous "heart" trademark, as well as the "Southwest Airlines" mark, as circled in the Kiwi website screenshots below:





34.     Kiwi's use of the Southwest trademarks to identify and sell flights on Southwest negatively impacts Southwest's reputation. For example, booking on kiwi.com is more expensive than booking on the Southwest Website because Kiwi charges additional fees. Thus, Kiwi is not merely scraping data and republishing it; Kiwi is improperly extracting data from the Southwest Website and trading on Southwest's reputation for having no hidden fees in support of its own commercial activity.

**D. Kiwi Inflates Fares and Charges Service Fees That Are Not Collected By Southwest**

35.     Kiwi does not identify the flight prices or additional charges in a transparent or straightforward manner. By way of example and comparison, the Southwest Website shows a total price of $395.97 for a round-trip, non-stop flight from Dallas, Texas (DAL) to Savannah, Georgia (SAV) with an outbound flight on March 13, 2021 and a return flight on March 20, 2021 (the "Dallas-Savannah Flight"):



36.    But Kiwi inflates the price of the Dallas-Savannah Flight to $414 by adding a "Service Fee" or "Other Fees" of about $18 to the actual ticket price:



37.    Kiwi also promises an "Automatic flight check-in," which violates the Terms & Conditions on the Southwest Website because "online check-in providers may not use Southwest

web pages to check-in customers online or attempt to obtain for them a boarding pass in any certain boarding group."[10] Moreover, on information and belief, Kiwi does not actually provide customers with an automatic flight check-in service, despite promising it.

38.     Kiwi also misrepresents that Southwest fares purchased through kiwi.com are nonrefundable or subject to change fees, which is not true because Southwest's fare policies have "No Change Fees" (though fare differences may apply); and tickets are always refundable (i.e., Business Select or Anytime fares) or reusable as travel credit (i.e., Wanna Get Away fares). In the example below, Kiwi falsely represents that the fare for the Dallas-Savannah Flight (which Kiwi upcharges from $395.97 to $413.46) is nonrefundable (which is not true) and further misrepresents that (a) the "Saver Ticket" (for $413.64) is not eligible for a refund; (b) rebooking would cost the price of a new ticket; and (c) there would be limited customer support. Each of those statements is false or misleading, as Kiwi upcharges the price of a Southwest flight by more than $200 for "services" and rebooking options even though Southwest has a "No Change Fees" policy (Southwest does not charge fees to change or cancel flights, though fare differences may apply).

---

[10] *See* Ex. A, Terms & Conditions at 2.



39.     On the next page of the booking path, Kiwi again misrepresents Southwest's ticket policies by indicating a customer would need to pay an additional $24.55 for "Premium Services" to get email support or avoid fees for other services. In effect, Kiwi is seeking to further increase the price of a Southwest flight by an additional $24.55 for "services" that are not otherwise collected by Southwest because it does not charge any fees for email support or customer service.



40.     Kiwi also proposes undesirable and inefficient routes and connections without adequate disclosure to consumers of potential issues with such routes. For example, the below route proposes a one-hour flight from Burbank to Oakland with an almost eight-hour *bus ride* to return to Burbank.



41.     These and other unlawful, deceptive, and harmful practices by Kiwi deliver inferior service, cause customers to incur hidden fees, and directly contradict Southwest's policies, all of which harms Southwest's reputation and customer goodwill.

**E.  Kiwi Refuses to Cease its Wrongful Conduct**

42.     Beginning in 2018, Southwest sent a series of cease-and-desist letters to Kiwi demanding that it stop selling Southwest fares and displaying its trademark logos. These letters also emphasized Kiwi's violations of Southwest's Terms & Conditions.

43.     For example, in August 2018, Southwest sent a cease-and-desist notice to Kiwi that (a) provided actual knowledge of the Terms & Conditions; and (b) notified Kiwi that it was violating the Terms & Conditions through, among other things, its unauthorized web scraping activity and offering a third-party product or service not authorized or approved by Southwest.

18

44.     However, Kiwi continued to violate the Terms & Conditions through the display of Southwest Marks, scraping fare data from the Southwest Website, and engaging in the unauthorized sale of Southwest fares.

45.     On information and belief, on or about June 3, 2019, the U.S.-based investment firm General Atlantic made a strategic investment in Kiwi. A press release from Kiwi included a quote from Tanzeen Syed (a Managing Director at General Atlantic) who said: "In just six years, [Kiwi's CEO] Oliver and the Kiwi.com team have profitably built one of the most disruptive and transformative technology platforms in the large and fragmented online travel industry."

46.     On August 28, 2019, Southwest sent yet another cease-and-desist notice to the Chief Legal Officer of Kiwi that again (a) provided additional notice of the Terms & Conditions; and (b) notified Kiwi that it was violating the Terms & Conditions through, among other things, its unauthorized web scraping activity and offering a third-party product or service not authorized or approved by Southwest. Among other things, Southwest explained to the Chief Legal Officer of Kiwi that (a) Southwest provided prior written notice to Kiwi of its trademark infringement and violations of the Terms & Conditions; (b) Southwest never granted Kiwi permission to publish Southwest's fare data; and (c) Southwest has successfully pursued claims against other companies to cease similar unlawful conduct with respect to unauthorized use of the Southwest Registrations and/or the Southwest Website. Southwest again demanded that Kiwi immediately cease and desist from (1) extracting Southwest's flight and fare information from the Southwest Website and its proprietary servers or websites; (2) publishing Southwest fare information on the kiwi.com website, through its mobile applications or elsewhere; and (3) use of Southwest Registrations, including the famous "Heart" logo, in violation of U.S. copyright law.

47. On September 11, 2019, Kiwi's Senior Business Development Manager Slavomir Mucha sent an email to a Southwest Attorney (at Southwest's headquarters in Dallas, Texas) and acknowledged receipt of the August 2019 cease-and-desist notice. Kiwi then proposed to Southwest's employees in Dallas that Kiwi would like to "discuss the options of a direct co-operation" and referenced prior business discussions with Southwest.

48. On October 5, 2019, Southwest responded and made clear that Southwest had "no interest in a partnership with Kiwi" and that Kiwi should immediately stop scraping data from southwest.com because it violates the terms and conditions of use of the website and immediately stop using Southwest's logos and marks for commercial purposes because it violates Southwest's trademark rights. Despite multiple cease-and-desist notices, Kiwi continued its practice of unlawfully using Southwest's data and marks for its own commercial purposes without permission in violation of the Terms & Conditions of use of the Southwest Website.

49. On July 14, 2020, a Kiwi manager Pedro Gutierrez Kardum sent a LinkedIn request to a Southwest Vice President whose profile lists his location as Dallas, Texas.

50. On July 14, 2020, the Kiwi Manager Pedro Gutierrez Kardum (whose title is Business Development Manager – Americas) sent an email to a Southwest Vice President and other Southwest leaders (at the company's headquarters in Dallas, Texas) to "explore further cooperation" and attached a sales report showing Southwest ticket sales on kiwi.com. The report showed that between 2019 and the first half of 2020, Kiwi had generated €13,960,021 (equivalent to more than $17 million) in revenue from the improper and unauthorized sale of Southwest flights.

51. On July 28, 2020, Kiwi's Pedro Kardum sent a calendar invitation to schedule a call with a Southwest Marketing employee (based in Dallas, Texas). On July 30, 2020, the Southwest Marketing employee spoke on the phone with Kiwi's Pedro Gutierrez Kardum. During

this July 30th call, on behalf of Kiwi, Kardum explained that he handles accounts for U.S. airlines and, in response, the Southwest Marketing employee: (a) explained Southwest's business model and distribution philosophy for the Southwest Website; (b) explained Southwest's prior history in sending cease and desist letters to Kiwi; (c) made clear that Southwest did not authorize scraping of the Southwest Website; and (d) requested that Kiwi remove Southwest's content and brand logos from the kiwi.com website. On behalf of Kiwi, Kardum indicated that he would raise these issues with Kiwi's leadership; however, Kardum also said that it was unlikely that Kiwi's leadership would comply with Southwest's demands.

52.    On December 11, 2020, Southwest sent a final cease-and-desist letter to Kiwi's registered agent in Delaware, Kiwi's registered agent in Florida, Kiwi's Chief Legal Officer, Kiwi's CEO, a Kiwi Board Member (a General Atlantic employee), and a General Counsel for General Atlantic to once again (a) provide additional notice of the Terms & Conditions; and (b) notify Kiwi that it was violating the Terms & Conditions through, among other things, its unauthorized web scraping activity and offering a third party product or service not authorized or approved by Southwest. Southwest attached copies of its prior cease-and-desist notices, as well as a copy of the Terms & Conditions, and once again explained to Kiwi, through its executives and US-based registered agent, that: (a) Southwest has previously sent letters to Kiwi notifying the company of trademark infringement and violations of the Terms & Conditions; (b) Southwest has not granted Kiwi with access or permission to publish Southwest's fare data; (c) Southwest has successfully pursued claims against other companies to cease similar unlawful conduct with respect to unauthorized use of the Southwest Registrations and/or the Southwest Website. *See, e.g.*, *Southwest Airlines Co. v. Farechase, Inc.*, 318 F.Supp.2d 435 (N.D. Tex. 2004). Southwest again demanded that Kiwi immediately cease and desist (1) extracting Southwest's flight and fare

information from the Southwest Website and its proprietary servers or websites; (2) publishing Southwest fare information on the kiwi.com website, through its mobile applications or elsewhere; and (3) using the Southwest Marks, including the "Heart" logo, in violation of U.S. copyright law.

53.     For many months, between 2018 and 2020, several Southwest Departments have dedicated company time and resources to investigate Kiwi's website and its unauthorized access of the Southwest Website.

54.     Kiwi's activities are causing dilution of the quality of the famous Southwest Marks and other harm to Southwest, its business reputation, and goodwill for which Southwest has no adequate remedy at law.

55.     Kiwi's activities are likely to cause, and have caused, confusion; Kiwi conduct is misleading and deceiving to the public and is likely to lead (and has led) the public to wrongly conclude that the goods and services offered by Kiwi originate with, are sponsored by, and/or are authorized by Southwest—all to the damage and harm of Southwest and the public.

## V.     CAUSES OF ACTION

**COUNT ONE: Breach of Contract**

56.     Southwest repeats and realleges the allegations above as if fully set forth herein.

57.     Use of the Southwest Website is governed by and subject to Southwest's Terms & Conditions.

58.     At all relevant times, the main homepage for the Southwest Website and other web pages have provided a link to the Terms & Conditions and alert users that "Use of the Southwest websites and our Company Information constitutes acceptance of our Terms & Conditions." The Terms & Conditions constitutes a valid and enforceable agreement between Southwest and Kiwi.

59.     Through direct correspondence as early as 2018 and continuing through December 2020, Southwest further provided Kiwi with further actual notice of the Terms & Conditions, including that Kiwi's use of Southwest fare and pricing information without Southwest's authorization violated the Terms & Conditions.

60.     Kiwi has regularly accessed the Southwest Website with knowledge of the Terms & Conditions and its prohibitions. Despite Kiwi's knowledge of the Terms & Conditions, Kiwi continues to this day to access the Southwest Website to, among other things, copy, aggregate, display, distribute and/or make derivative use of the Southwest Website and its content.

61.     Kiwi's actions breach the provisions of the Terms & Conditions by at least the following: (1) using the Southwest Website to copy, display, distribute, publish, re-post, reproduce, re-use, sell, transmit or use Southwest's company information to create a derivative work, namely the fare and pricing information on kiwi.com; (2) using Southwest's company information on fare and pricing for its own commercial gain; (3) engaging in an activity in connection with Southwest's company information (among other things, charging change fees) that is fraudulent, unlawful, false or misleading; (4) harvesting information from the southwest.com website; and (5) using one or more automatic device(s), program(s), algorithm(s) or methodology(ies) to access, extract, and use information from the Southwest Website for, or in connection with, offering services through kiwi.com.

62.     Kiwi's continued breaches of the Terms & Conditions have damaged, and will continue to damage, Southwest.

**COUNT TWO: Trademark Infringement under 15 U.S.C. § 1114**

63.     Southwest repeats and realleges the allegations above as if fully set forth herein.

64.    The services for which Kiwi uses the Southwest Marks are identical and/or substantially similar to services offered by Southwest.

65.    Kiwi's conduct—including its prominent use of Southwest's protected "Heart" mark in conjunction with promoting and re-selling Southwest's fares—has caused and is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of Kiwi with Southwest, or as to the origin, sponsorship or approval of Kiwi's goods and services by Southwest.

66.    The acts of Kiwi constitute infringement of one or more of the Southwest Marks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114 as represented in U.S. Federal Registration Nos. 1,738,670; 3,129,737; 4,806,962; 4,768,717; 4,720,322; 4,723,791; 3,027,789 and 4,892,223.

67.    Southwest has suffered and will continue to suffer irreparable harm as a result of Kiwi's infringement of the Southwest Marks.

68.    Southwest is entitled to monetary damages for Kiwi's infringement.

69.    Kiwi has acted with knowledge of Southwest's ownership of the Southwest Marks and with deliberate intention or willful blindness to unfairly benefit from the incalculable goodwill symbolized by these marks. Kiwi has willfully infringed one or more of the Southwest Marks, and the intentional nature of Kiwi's actions make this case exceptional under 15 U.S.C. § 1117(a).

70.    Southwest has been, is now, and will be irreparably harmed by Kiwi's infringement and, unless enjoined by the Court pursuant to 15 U.S.C. § 1116, Kiwi will continue to infringe the Southwest Marks.

**COUNT THREE: False Designation of Origin and Unfair Competition under 15 U.S.C. § 1125(a)**

71.    Southwest repeats and realleges the allegations above as if fully set forth herein.

72.     Kiwi's conduct has and is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of Kiwi with Southwest, or as to the origin, sponsorship or approval of Kiwi's goods and services by Southwest. For example, consumers associate the "Heart" log with Southwest, known for having "no change fees" (though fare differences may apply) and "no hidden fees;" yet customers purchasing Southwest flights through Kiwi are charged both.

73.     The acts of Kiwi constitute false designation of origin which is likely to cause and have caused confusion in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

74.     The intentional nature of Kiwi's actions entitles Southwest to recover profits, damages, costs, and attorney's fees under 15 U.S.C. § 1117(a).

75.     Southwest has suffered and will continue to suffer irreparable harm as a result of such false designation of origin by Kiwi and, unless enjoined by the Court pursuant to 15 U.S.C. § 1116, Kiwi will continue to misrepresent and mislead the public that its services are in some manner connected with, sponsored by, affiliated with, related to, or approved by Southwest.

**COUNT FOUR: Dilution under 15 U.S.C. § 1125(c)**

76.     Southwest repeats and realleges the allegations above as if fully set forth herein.

77.     Southwest is engaged in substantially exclusive use of the Southwest Marks.

78.     The Southwest Marks are widely recognized by the consuming public of the United States to indicate Southwest as the source of services provided.

79.     The Southwest Marks have achieved fame under the relevant provisions of Lanham Act.

80.     Kiwi's infringing use of the Southwest Marks occurred after the Southwest Marks achieved such fame.

81.     Kiwi has acted with knowledge of Southwest's ownership of the Southwest Marks and with deliberate intention or willful blindness to unfairly benefit from the incalculable goodwill symbolized by these marks.

82.     Kiwi's conduct has and is likely to dilute the value of one or more of the Southwest Marks. For example, consumers associate the "Heart" logo with Southwest, known for having "no change fees" (though fare differences may apply) and "no hidden fees;" yet customers purchasing Southwest flights through Kiwi are charged both.

83.     The acts of Kiwi constitute a dilution, including dilution by tarnishment, in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

84.     Kiwi's intentional use of one or more of the Southwest Marks has caused the Southwest Marks to lose the distinctive quality associated with Southwest's exclusive use of the Southwest Marks.

85.     The acts of Kiwi have caused harm to the reputation of the Southwest Marks due to the deceptive, poor quality, and nature of the services and products provided by Kiwi.

86.     The intentional nature of Kiwi's actions entitles Southwest to recover profits, damages and costs, and attorney's fees under 15 U.S.C. § 1117(a).

87.     Southwest has suffered and will continue to suffer dilution of the Southwest Marks as a result of such actions by Kiwi and, unless enjoined by the Court pursuant to 15 U.S.C. § 1116, Kiwi will continue to dilute the Southwest Marks.

**COUNT FIVE: Computer Fraud and Abuse under 18 U.S.C. § 1030**

88.     Southwest repeats and realleges the allegations above as if fully set forth herein.

89.     Southwest's computers and servers are involved in interstate and foreign commerce and communication, and are protected computers under 18 U.S.C. § 1030(e)(2).

90.     Kiwi intentionally accessed Southwest's protected computers or servers without authorization or in excess of authorization as defined by Southwest's Terms & Conditions and thereby obtained information from Southwest's protected computers or servers, including but not limited to Southwest's fares and pricing, in violation of 18 U.S.C. § 1030(a)(2).

91.     Kiwi knowingly and with an intent to defraud accessed Southwest's protected computers and servers without authorization or in excess of authorization, and by means of this access furthered the intended fraud and obtained valuable information from Southwest's computers and servers, including but not limited to Southwest's fares and pricing, to obtain something of value, in violation of 18 U.S.C. § 1030(a)(4).

92.     Southwest has suffered damage and loss by reason of these violations, including, without limitation, harm to Southwest's content and programs, and expenses associated with being forced to investigate the unauthorized access and abuse of its computers and servers, with other losses and damage in an amount to be proven at trial, over $5,000 aggregated over a one-year period.

93.     In addition, Southwest has suffered and will continue to suffer irreparable harm and its remedy at law is not itself adequate to compensate it for injuries inflicted by the Defendants. Accordingly, Southwest is entitled to injunctive relief.

**COUNT SIX: Violation of Texas Penal Code § 33.02**

94.     Southwest repeats and realleges the allegations above as if fully set forth herein.

95.     Kiwi knowingly, and without Southwest's consent, accessed Southwest's computers, computer network or computer system, in violation of Texas Penal Code § 33.02.

96.     Southwest, and its property, has been and will continue to be damaged as the result of Kiwi's violations.

97.     Pursuant to Texas Civil Practice & Remedies Code § 143.001, Kiwi's knowing and intentional violation of Texas Penal Code § 33.02 makes Kiwi liable for its harmful access of Southwest's computers, computer network, or computer system.

98.     Southwest has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law. Accordingly, Southwest is entitled to injunctive relief.

**COUNT SEVEN: Unjust Enrichment under Texas Common Law**

99.     Southwest repeats and realleges the allegations above as if fully set forth herein.

100.    Kiwi has been unjustly enriched by taking undue advantage of Southwest's publicly available fare information. Kiwi has benefitted from the use of Southwest's proprietary information and makes a profit from offering Southwest flights through its website.

101.    Southwest has been and continues to be injured by Kiwi's unlawful acts and is entitled to damages.

## VI.     ATTORNEY'S FEES

102.    Southwest repeats and realleges the allegations above as if fully set forth herein.

103.    Southwest was required to retain the undersigned's services in the prosecution of this claim. Pursuant to at least Texas Civil Practice & Remedies Code §§ 38.001 and 143.002, Southwest seeks reasonable and necessary attorney's fees.

## VII.    APPLICATION FOR INJUNCTIVE RELIEF

104.    As set forth above, Kiwi's actions in violation of the Lanham Act and Texas law have caused, and are continuing to cause, substantial and irreparable damage to Southwest for which there is no adequate remedy at law. Kiwi has improperly used and will continue to improperly use the Southwest Marks unless this Court prevents it from doing so. Southwest will continue to lose control over its own reputation and goodwill, and the public and consumers likely

will continue to be confused, misled, and deceived by the fact that Kiwi offers competing or related services under the Southwest Marks. Southwest has a substantial likelihood of success on the merits and is, therefore, entitled to an injunction preventing Kiwi's continued infringement, including an injunction against Kiwi's continued use of the Southwest Marks.

105.   Southwest requests that Kiwi, all companies owned or controlled by any of them either directly or indirectly, their employees, representatives, agents, members, and others acting in concert with them, be preliminarily and permanently enjoined from: (1) extracting Southwest's flight and fare information from the Southwest Website and its proprietary servers or websites; (2) publishing Southwest fare information on any website, including kiwi.com, through its mobile applications or elsewhere; (3) using the Southwest Marks, including the famous "Heart" logo, in violation of U.S. trademark law; and (4) accessing and using Southwest's website and data in violation of Southwest's Terms & Conditions.

## VIII.   PRAYER FOR RELIEF

Southwest respectfully requests an order and/or judgment:

A.   That the Defendants, their officers, members, managers, affiliates, agents, employees, servants, representatives, any entities owned or controlled by them, and all persons acting under or in concert with them, be preliminarily enjoined throughout the pendency of this lawsuit, and permanently enjoined thereafter, from: (1) extracting Southwest's flight and fare information from the Southwest Website and its proprietary servers or websites; (2) publishing Southwest fare information on the kiwi.com website, through its mobile applications or elsewhere; (3) use of the Southwest Marks, including its famous "Heart" logo, in violation of U.S. copyright law; and (4) accessing and using Southwest's Website and data in violation of Southwest's Terms & Conditions;

B.      That the Defendants be enjoined from using the Southwest Marks, or any other mark, word or name confusingly similar to or including those marks, in the ordinary course of business;

C.      That the Defendants be required to account for and pay to Southwest all profits and benefits they derived as a result of the activities complained of herein;

D.      That the Defendants be required to pay to Southwest actual, consequential, and compensatory damages sustained as a result of the activities complained of herein;

E.      That the Defendants be required to pay increased damages due to their willful infringement;

F.      That the Defendants be required to pay pre-judgment and post-judgment interest at the highest rates allowed by law;

G.      That the Defendants be required to pay costs and attorney's fees; and

H.      For such other and further relief as this Court deems just and proper.

Dated:  January 14, 2021                          Respectfully submitted,

By:  */s/ Michael C. Wilson*  _____

Michael C. Wilson
Texas State Bar No. 21704590
mwilson@munckwilson.com
S. Wallace Dunwoody
Texas State Bar. No. 24040838
wdunwoody@munckwilson.com
Amanda K. Greenspon
Florida Bar No. 1014584
AGreenspon@munckwilson.com
Julie M. Christensen
Texas State Bar No. 24105601
jchristensen@munckwilson.com
**MUNCK WILSON MANDALA, LLP**
12770 Coit Road, Suite 600
Dallas, Texas 75251
Telephone: (972) 628-3600

**ATTORNEYS FOR PLAINTIFF
SOUTHWEST AIRLINES CO.**

825304