IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SOUTHWEST AIRLINES CO., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 3:21-cv-00098 |
| | § | |
| KIWI.COM, INC. and KIWI.COM S.R.O., | § | |
| | § | |
| | § | |
| Defendants. | § | |

---

**PLAINTIFF SOUTHWEST AIRLINES CO.'S RESPONSE IN OPPOSITION TO KIWI.COM, INC.'S MOTION TO DISMISS FOR IMPROPER VENUE**

---

Michael C. Wilson
Texas State Bar No. 21704590
mwilson@munckwilson.com
S. Wallace Dunwoody
Texas Bar. No. 24040838
wdunwoody@munckwilson.com
Amanda K. Greenspon
Florida Bar No. 1014584
agreenspon@munckwilson.com
Julie M. Christensen
Texas State Bar No. 24105601
jchristensen@munckwilson.com
**MUNCK WILSON MANDALA, LLP**
12770 Coit Road, Suite 600
Dallas, Texas 75251
Telephone: (972) 628-3600

**ATTORNEYS FOR PLAINTIFF SOUTHWEST AIRLINES CO.**

# TABLE OF CONTENTS

I. INTRODUCTION .......... 1

II. STATEMENT OF FACTS .......... 2

III. ARGUMENT AND AUTHORITIES .......... 4

A. Residency venue is proper under § 1391(b)(1). .......... 4

1. Kiwi waived residency venue by not challenging personal jurisdiction. .......... 5

2. The Complaint alleges unchallenged facts sufficient to establish that Kiwi "resides" in this District. .......... 6

B. Transactional venue is proper under § 1391(b)(2). .......... 7

C. Kiwi has not shown that the selected forum is unreasonable. .......... 10

D. Southwest requests the opportunity to replead if necessary. .......... 13

IV. CONCLUSION .......... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albany Ins. Co. v. Almacenadora Somex, S.A.*,
5 F.3d 907 (5th Cir. 1993) ....................5

*Am. Eyewear, Inc. v. Peeper's Sunglasses & Accessories, Inc.*,
106 F. Supp. 2d 895 (N.D. Tex. 2000) ....................5, 7

*Barnett v. DynCorp Int'l, L.L.C.*,
831 F.3d 296 (5th Cir. 2016) ....................12

*Braspetro Oil Servs. v. Modec (USA), Inc.*,
240 F. App'x 612 (5th Cir. 2007) ....................4

*Calix-Chacon v. Global Int'l Marine, Inc.*,
493 F.3d 507 (5th Cir. 2007) ....................10

*Capital Partners Funding, LLC v. Total Transp. Serv. LLC*,
3:09-CV-1016-M, 2009 WL 10704863 (N.D. Tex. Aug. 7, 2009) ....................5

*Carey v. 24 Hour Fitness, USA, Inc.*,
669 F.3d 202 (5th Cir. 2012) ....................11

*Carnival Cruise Lines, Inc. v. Shute*,
499 U.S. 585 (1991)....................11

*Carrot Bunch Co., Inc. v. Computer Friends, Inc.*,
218 F. Supp. 2d 820 (N.D. Tex. 2002) ....................7

*Feline Instincts, LLC v. Feline Future Cat Food Co., Inc.*,
4:09-CV-644-Y, 2010 WL 4942188 (N.D. Tex. Dec. 6, 2010)....................5

*Francesca's Collections, Inc. v. Medina*,
CIV.A. H-11-307, 2011 WL 3925062 (S.D. Tex. Sept. 7, 2011)....................7

*Gen. Design Sign Co., Inc. v. Am. Gen. Design, Inc.*,
CIV. 3:02-CV-2298-H, 2003 WL 251931 (N.D. Tex. Jan. 31, 2003)....................5

*Haynsworth v. The Corp.*,
121 F.3d 956 (5th Cir. 1997) ....................11

*In re 24R, Inc.*,
324 S.W.3d 564 (Tex. 2010)....................11

*In re AIU Ins. Co.*,
148 S.W.3d 112 (Tex. 2004) .......... 12

*In re Halliburton Co.*,
80 S.W.3d 566 (Tex. 2002) .......... 11

*In re Poly-Am., L.P.*,
262 S.W.3d 337 (Tex. 2008) .......... 12

*In re Volkswagen of Am., Inc.*,
545 F.3d 304 (5th Cir. 2008) .......... 5

*Int'l Software Sys., Inc. v. Amplicon, Inc.*,
77 F.3d 112 (5th Cir. 1996) .......... 13

*Int'l Truck & Engine Corp. v. Quintana*,
259 F. Supp. 2d 553 (N.D. Tex. 2003) .......... 7

*Kevlin Services, Inc. v. Lexington State Bank*,
46 F.3d 13 (5th Cir. 1995) .......... 10

*M/S Bremen v. Zapata Off Shore Co.*,
407 U.S. 1 (1972) .......... 10, 11, 12

*Mist-On Sys., Inc. v. Nouveau Body & Tan, L.L.C.*,
No. 4:03-CV-843-Y, 2004 WL 7335080 (N.D. Tex. June 15, 2004) .......... 8

*Mitsui & Co. (USA), Inc. v. MIRA M/V*,
111 F.3d 33 (5th Cir. 1998) .......... 10

*Morrison v. Amway Corp.*,
517 F.3d 248 (5th Cir. 2008) .......... 11

*Munoz v. Toyota Motor Corp.*,
CIV.A. C-11-170, 2011 WL 4000902 (S.D. Tex. July 20, 2011) .......... 5

*Nevarez v. Forty Niners Football Co., LLC*,
16-CV-07013, 2017 WL 3492110 (N.D. Cal. Aug. 15, 2017) .......... 10

*Principal Tech. Eng'g, Inc. v. SMI Companies*,
4:09-CV-316, 2009 WL 4730609 (E.D. Tex. Dec. 8, 2009) .......... 5

*Snelling Employment, LLC v. Doc Johnson Enterprises*,
3:18-CV-0521-B, 2018 WL 3659067 (N.D. Tex. Aug. 2, 2018) .......... 9

*Stewart Org., Inc. v. Ricoh Corp.*,
487 U.S. 22 (1998) .......... 10

*Sw. Airlines Co. v. BoardFirst, L.L.C.*,
3:06-CV-0891-B, 2007 WL 4823761 (N.D. Tex. Sept. 12, 2007) ....................................... 9

*Ticketmaster L.L.C. v. RMG Techs., Inc.*,
507 F. Supp. 2d 1096 (C.D. Cal. 2007) ....................................................................... 10

*TravelJungle v. Am. Airlines, Inc.*,
212 S.W.3d 841 (Tex. App.—Fort Worth 2006, no pet.) ................................................ 8

*Umphress v. Hall*,
479 F.Supp.3d 344 (N.D. Tex. Aug. 14, 2020).................................................................. 8

*Venture Cotton Co-op. v. Freeman*,
435 S.W.3d 222 (Tex. 2014)............................................................................................ 12

*Vomastek v. AXA Equitable Life Ins. Co.*,
5:15-CV-50-JRG, 2016 WL 3771278 (E.D. Tex. Feb. 17, 2016) ........................................ 5

*WhatsApp Inc. v. NSO Group Techs. Ltd.*,
472 F. Supp. 3d 649 (N.D. Cal. 2020) ............................................................................... 8

**Statutes**

28 U.S.C. § 1391 ............................................................................................... *passim*

**Other Authorities**

RESTATEMENT (SECOND) OF CONTRACTS § 208 ........................................................... 12

FED. R. CIV. P. 12 ............................................................................................... *passim*

## I. INTRODUCTION

Southwest Airlines Co. ("Southwest") filed this action to stop Kiwi.com, Inc. ("Kiwi") and its parent company, Kiwi.com, s.r.o., from unlawfully harvesting and scraping data from Southwest's website www.southwest.com (the "Southwest Website") hosted in this District,[1] and to stop them from selling Southwest flights on www.kiwi.com in violation of the Terms and Conditions (the "Website Terms") of the Southwest Website. Kiwi's ***still-ongoing*** violations of the Website Terms are the subject of a pending application for injunctive relief [D.I. 18-19] and give rise to a host of claims, including breach of contract and trademark infringement.

In an attempt to avoid or delay prompt consideration of these claims, Kiwi's Motion to Dismiss for Improper Venue [D.I. 17] claims—***without any evidence***—that the Southwest Website is hosted "in the cloud" with Amazon Web Services on servers located in the State of Washington. Kiwi's speculation that the Southwest Website is "apparent[ly]" being hosted elsewhere is flat wrong. And this response includes evidence confirming that the Southwest.com servers are located in this District,[2] just as Southwest alleged in its lawsuit.[3]

In its motion, Kiwi has conceded it is subject to this Court's personal jurisdiction but argues that the Court must dismiss Southwest's claims based on improper venue because events giving rise to Southwest's claims did not arise here. Kiwi's positions are factually and legally incorrect and Kiwi's motion can be denied on several, independent grounds.

First, as a threshold matter, Kiwi waived its venue objection when it failed to object to personal jurisdiction because venue is proper under 28 U.S.C. § 1391(b)(1) wherever a corporate defendant "resides," which is any district where the court has personal jurisdiction.

---

[1] *See* Ex. A, Lam Decl. ¶ 3 (App. 2).

[2] *Id.*

[3] *See* Complaint [D.I. 1] at ¶¶ 19-20.

Second, while Kiwi speculates (wrongly) about the location of servers for Southwest.com, Kiwi does not even attempt to contest Southwest's other factual allegations that Kiwi has conducted substantial commercial activities in this District, including booking thousands of Southwest flights that originated or terminated within the Northern District of Texas. And when Kiwi purchases a flight through the Southwest Website (over 170,000 times and counting), Kiwi acknowledges and accepts the Website Terms, which state that "any transactions carried out through the [Southwest Website] will be deemed to take place in the State of Texas."[4] Kiwi's activities are more than sufficient to establish residency venue under 28 U.S.C. § 1391(b)(1). Kiwi's motion does not even attempt to argue otherwise.

Third, venue is also proper under § 1391(b)(2) because Kiwi's unauthorized scraping activities (and other relevant, wrongful conduct) occurred here. On this point, Kiwi's motion ***accepts*** that "venue turns on the technical question of where, geographically, [website] requests are sent and answered," and that "proper venue for this dispute is … the site of Southwest's website hosting."[5] Despite these admissions, Kiwi argues—again without evidence—that it is "overwhelmingly likely" that the servers supporting the Southwest Website are not in this District.[6] Kiwi's assumption is false. As explained above, the Southwest Website is hosted by Southwest in Dallas (not by Amazon Web Services or in the State of Washington). Thus, the entire basis for Kiwi's venue objection is unsupported and simply incorrect. Kiwi's motion must be denied.

## II. STATEMENT OF FACTS

Southwest's Complaint [D.I. 1] contains the following allegations supporting jurisdiction and venue:

---

[4] *See* Injunction Appendix [D.I. 19] at Ex. A-3, Website Terms (App. 42-43).
[5] Motion at 8-10 [D.I. 17].
[6] Motion at 2 [D.I. 17].

13. This Court has jurisdiction over Kiwi and this dispute pursuant to the Terms & Conditions for use of the Southwest Website, which provide as follows:

> **Forum Selection**
> **These Terms and the relationship between you and Southwest shall be governed by the laws of the State of Texas without regard to any conflict of law provisions. You agree to the personal and exclusive jurisdiction of the courts located within Dallas, TX. You hereby consent to the exclusive jurisdiction and venue of the State and Federal courts in Dallas, Texas in all disputes. You agree and understand that you will not bring against the Southwest Parties any class action lawsuit related to your access to, dealings with, or use of the Service.**[7]

14. In addition to consenting to this Court's jurisdiction by using the Southwest Website (even after receiving multiple cease and desist notices), Kiwi has committed torts in this District, breached a contract in this District, violated Texas statutory law in this District, and systematically conducts business in this District. Kiwi has purposefully availed itself of the forum by soliciting business from Texas residents and purposefully directing its actions towards Texas, including by offering and selling flights in Texas, and soliciting business from Southwest's commercial and marketing leadership at its headquarters in Dallas, Texas.

15. For example, Kiwi's website offers and sells Southwest flights to airports [in] ten (10) Texas cities, including: Dallas (DAL), Houston (HOU), Austin (AUS), San Antonio (SAT), El Paso (ELP), Midland/Odessa (MAF), Lubbock (LBB), Amarillo (AMA), Harlingen (HLG), and Corpus Christi (CRP) (collectively, "Texas Airports").

16. Kiwi has sold more than 19,000 Southwest tickets with an origin or destination at one of the Texas Airports.

17. Kiwi has sold more than 1,400 Southwest reservations (for more than 1,800 passengers) that include a billing zip code in Texas.

18. The injuries Kiwi inflicts on Southwest are felt in this District, and Kiwi knew that serious harmful effects from its conduct would occur here.

19. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the claims asserted in this action arose in this District and a substantial part of the activities, conduct and damages have occurred in Texas. During all relevant times,

[7] *See* Injunction Appendix [D.I. 19] at Ex. A-3, Website Terms (App. 42) (emphasis in original).

> Kiwi repeatedly, knowingly and intentionally accessed without Southwest's authorization Southwest servers located in this judicial district. Additionally, as quoted above, pursuant to the Terms & Conditions quoted above, Kiwi consented to exclusive jurisdiction of courts in Dallas, Texas for all disputes relating to the use of the Southwest Website.

Kiwi's motion does not challenge most of these allegations in the Complaint, and they must be taken as true for purposes of evaluating Kiwi's venue challenge.[8] In fact, Kiwi contests only one jurisdictional or venue fact—the location of servers for the Southwest Website. With this response, Southwest has submitted sworn testimony from its Technology Department confirming that: (i) the Southwest Website is hosted by Southwest at data centers in this District; (ii) when a user obtains or views flight information or makes a reservation online with the Southwest Website, the user interacts with Southwest's servers in this District; and (iii) Amazon Web Services does not host the Southwest Website (nor are the website servers located in Washington).[9]

## III. ARGUMENT AND AUTHORITIES

### A. Residency venue is proper under § 1391(b)(1).

Under 28 U.S.C. § 1391(b)(1), venue is proper in any judicial district where Kiwi "resides,"[10] meaning in "any judicial district in which [Kiwi] is subject to the court's personal jurisdiction."[11] The "residence" of Kiwi's foreign-entity parent is disregarded for purposes of venue.[12] In a multi-district state like Texas, Kiwi is deemed to "reside" in any district of the state "within which its contacts would be sufficient to subject it to personal jurisdiction if that district

---

[8] *Braspetro Oil Servs. v. Modec (USA), Inc.*, 240 F. App'x 612, 615 (5th Cir. 2007).

[9] *See* Ex. A, Lam Decl. ¶¶ 3-4 (App. 2-3).

[10] *See* 28 U.S.C. § 1391(b)(1).

[11] *See* 28 U.S.C. § 1391(c)(2).

[12] *See* 28 U.S.C. § 1391(c)(3); *Am. Eyewear, Inc. v. Peeper's Sunglasses & Accessories, Inc.*, 106 F. Supp. 2d 895, 905 (N.D. Tex. 2000).

were a separate State."[13] Because corporations often have sufficient contacts to satisfy the requirement for most federal venues, the venue statute "has the effect of nearly eliminating venue restrictions in suits against corporations."[14]

**1. Kiwi waived residency venue by not challenging personal jurisdiction.**

A party seeking dismissal for lack of personal jurisdiction under Rule 12(b)(2) or improper venue under Rule 12(b)(3) must raise those grounds in one motion or the unraised defense is waived.[15] This prevents "piecemeal consideration of a case."[16] Because the question of residency venue depends on personal jurisdiction, the two issues rise and fall together—a defendant is either subject to both personal jurisdiction and residency venue in a district or it is subject to neither personal jurisdiction nor residency venue in the district.[17] A corporate defendant that waives an objection to personal jurisdiction in a district also waives an objection to residency venue in that district.[18] If a corporate defendant files a 12(b)(3) objection to improper venue without simultaneously raising a 12(b)(2) objection to personal jurisdiction, the defendant waives residency venue.[19]

---

[13] *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312–13 (5th Cir. 2008); *Feline Instincts, LLC v. Feline Future Cat Food Co., Inc.*, 4:09-CV-644-Y, 2010 WL 4942188, at *5 (N.D. Tex. Dec. 6, 2010).

[14] *In re Volkswagen of Am., Inc.*, 545 F.3d at 312–13.

[15] *Albany Ins. Co. v. Almacenadora Somex, S.A.*, 5 F.3d 907, 909 (5th Cir. 1993) (reversing trial court's order granting defendant's second motion to dismiss based on venue and forum selection clause that was raised in a second motion to dismiss); *Capital Partners Funding, LLC v. Total Transp. Serv. LLC*, 3:09-CV-1016-M, 2009 WL 10704863, at *1–2 (N.D. Tex. Aug. 7, 2009).

[16] *Albany Ins. Co.*, 5 F.3d at 909.

[17] *See e.g., Gen. Design Sign Co., Inc. v. Am. Gen. Design, Inc.*, CIV. 3:02-CV-2298-H, 2003 WL 251931, at *1 (N.D. Tex. Jan. 31, 2003); *see also Vomastek v. AXA Equitable Life Ins. Co.*, 5:15-CV-50-JRG, 2016 WL 3771278, at *2 (E.D. Tex. Feb. 17, 2016); *Principal Tech. Eng'g, Inc. v. SMI Companies*, 4:09-CV-316, 2009 WL 4730609, at *2 (E.D. Tex. Dec. 8, 2009); *Munoz v. Toyota Motor Corp.*, CIV.A. C-11-170, 2011 WL 4000902, at *3 (S.D. Tex. July 20, 2011).

[18] *See e.g., Gen. Design Sign Co., Inc.*, 2003 WL 251931, at *1.

[19] *See id.*

In its motion, Kiwi objects to venue, but Kiwi does not challenge personal jurisdiction. As a result, Kiwi has waived any objection to *both* personal jurisdiction and venue.[20] On that basis alone, venue is proper in the Northern District of Texas and the motion must be denied.

**2. The Complaint alleges unchallenged facts sufficient to establish that Kiwi "resides" in this District.**

Even if Kiwi had not waived personal jurisdiction, the Complaint contains allegations (and record evidence shows) that Kiwi is purposefully directing substantial commercial activity to this District. Among other things, Kiwi has (i) engaged in continuous, unauthorized scraping of Southwest's data from the Southwest Website hosted in this District; (ii) purchased over 170,000 flights from Southwest in this District (more than 6,700 of which originated or terminated in this District);[21] and (iii) actively solicited Southwest employees in this District to form a direct cooperative relationship with Kiwi.[22] These unchallenged allegations in the Complaint (and record evidence) show that residency venue is proper in this District.

The fact that much of Kiwi's conduct took place over the internet does not change the result.[23] In *Mink v. AAAA Development LLC*, the Fifth Circuit adopted the "sliding scale" test first

---

[20] Kiwi's failure to contest jurisdiction likely was not oversight. Any challenge to personal jurisdiction was doomed to failure given Kiwi's substantial commercial activities in this District—including, among other things, purchasing millions of dollars of flights each year from Southwest and another major air carrier based in this District, constant scraping of data from Southwest's servers located in this District, selling thousands of flights departing or arriving at airports in this District, and repeated acceptance of Southwest's Website Terms when purchasing flights on the Southwest Website (over 170,000 times).

[21] *See* Ex. B, Andorf Decl. ¶ 3 (App. 5-6); s*ee also* Injunction Appendix [D.I. 19] at Ex. A-6, Monthly Report (App. 70); Ex. C, Adorf Decl. at ¶¶ 3-5 (App. 170-71); Exs. C-1, C-2, C-3, C-4, C-5 (App. 174-429).

[22] *See* Complaint ¶¶ 14-18, 30-41, 47-51 [D.I. 1]; *see also* Ex. B, Andorf Decl. ¶ 3 (App.5-6). Southwest's Revenue Management Department has records showing over 6,700 reservations made by Kiwi where the passenger travelled to (or from) this District at airports in Dallas, Texas (DAL), Amarillo, Texas (AMA), or Lubbock, Texas (LBB).

[23] *Am. Eyewear, Inc.*, 106 F. Supp. 2d at 905 (denying motion to dismiss for improper venue because defendant was subject to personal jurisdiction); *Int'l Truck & Engine Corp. v. Quintana*, 259 F. Supp. 2d 553, 558 (N.D. Tex. 2003) (evaluating same facts under personal jurisdiction and venue analysis); *see Francesca's Collections, Inc. v. Medina*, CIV.A. H-11-307, 2011 WL 3925062, at *2 (S.D. Tex. Sept. 7, 2011) ("In evaluating venue in cases involving internet transactions, courts have found it useful to compare the law on personal jurisdiction to the law of venue in order to assess the appropriateness of plaintiff's chosen venue.") (internal citations omitted).

set forth in *Zippo Mfg. Co. v. Zippo Dot Com, Inc*., to evaluate the effects of a defendant's internet activities on personal jurisdiction.[24] Under *Zippo*, a court looks at the "nature and quality of commercial activity that an entity conducts over the Internet."[25] Where the defendant does business over the internet by entering into contracts with residents of other states and repeatedly transmitting computer files over the internet, those contacts support jurisdiction, and thus residency venue.[26] Here, Kiwi's substantial internet-based activities in this District include accepting the Southwest Website Terms, continuously downloading data from the Southwest Website over a period of years for commercial purposes, accessing the Southwest Website to purchase over 170,000 flights for resale on kiwi.com, completing sales of over 6,000 flights to or from airports in the Northern District of Texas, and transacting with customers here in Texas.[27] Under *Mink,* these substantial and sustained commercial activities support venue in the Northern District of Texas.

**B. Transactional venue is proper under § 1391(b)(2).**

Under § 1391(b)(2), venue is proper "in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred…"[28] Kiwi's motion states that transactional "venue turns on the technical question of where, geographically, [website] requests are sent and answered," and that "proper venue for this dispute is … the site of Southwest's website hosting."[29] Southwest agrees those facts support proper venue. And here, Southwest has shown that (i) the

---

[24] *See Mink*, 190 F.3d 333, 336 (5th Cir.1999) (citing *Zippo*, 952 F. Supp. 1119 (W.D.Pa.1997)).

[25] *Carrot Bunch Co., Inc. v. Computer Friends, Inc.*, 218 F. Supp. 2d 820, 824–25 (N.D. Tex. 2002) (citing *Zippo Mfg. Co*., 952 F. Supp. at 1124).

[26] *See id.*

[27] Ex. B, Andorf Decl. ¶ 3 (App.5-6); Complaint ¶¶ 16-18 [D.I. 1]; s*ee also* Injunction Appendix [D.I. 19] at Ex. A-6 Monthly Report (App. 70); Ex. C, Adorf Decl. at ¶¶ 3-5 (App. 170-71); Exs. C-1, C-2, C-3, C-4, C-5 (App. 174-429).

[28] 28 U.S.C. at § 1391(b)(2).

[29] Motion at 8-10 [D.I. 17].

Southwest Website is hosted by Southwest on servers in this District; and (ii) when a user obtains or views flight information or makes a reservation online, the user interacts with Southwest's servers in this District.[30] Thus, the dispositive factor according to Kiwi—"the site of Southwest's website hosting"—confirms that venue is proper and requires denial of Kiwi's motion.[31]

Kiwi's other substantial commercial activities in this District (discussed above) also support transactional venue. Under § 1391(b)(2), a court may also consider the location of the effects of the alleged conduct, which can include a consideration of a plaintiff's activities.[32] In this case, Southwest has pled or established substantial activities in this District giving rise to Southwest's claim, including that Southwest: (i) hosted the Southwest Website in Dallas; (ii) provided content and services under the Website Terms in Dallas; (iii) sent Kiwi cease-and-desist notices from Southwest's Legal Department in Dallas; (iv) operated thousands of flights in and out of airports in this District for customers who purchased tickets on kiwi.com; (v) fielded customer support contacts in Dallas from Kiwi and customers who purchased tickets on kiwi.com; and (vi) suffered real and substantial damages caused by Kiwi's conduct in Dallas.[33]

---

[30] *See* Ex. A, Lam Decl. ¶¶ 3-4 (App. 2-3).

[31] *TravelJungle v. Am. Airlines, Inc.*, 212 S.W.3d 841, 850–51 (Tex. App.—Fort Worth 2006, no pet.) (finding personal jurisdiction where defendant had intentionally accessed American Airlines internet servers located in the forum); *WhatsApp Inc. v. NSO Group Techs. Ltd.*, 472 F. Supp. 3d 649, 671–72 (N.D. Cal. 2020) (finding personal jurisdiction where defendants' program "sought out specific servers—including servers in California—in order to transmit malicious code through those servers.").

[32] *Umphress v. Hall*, 479 F.Supp.3d 344, 352 (N.D. Tex. Aug. 14, 2020) (denying motion to transfer in part because the injurious effects of defendants' alleged conduct occurred in district); *Mist-On Sys., Inc. v. Nouveau Body & Tan, L.L.C.*, No. 4:03-CV-843-Y, 2004 WL 7335080, at *6 (N.D. Tex. June 15, 2004) (Means, J.) (denying motion to transfer because the "injurious effects [of defendants' alleged conduct] occurred in Texas").

[33] *See* Complaint [D.I. 1]; *see* Ex. A, Lam Decl. ¶ 3-4 (App. 2-3); Ex. B, Andorf Decl. ¶ 3 (App. 5-6); *see* Injunction Appendix [D.I. 19] at Ex. A, Hursh Decl. ¶¶ 3, 5, 6, 19-23, 27-28, 54-55; Ex. B, Buckley Decl. ¶¶ 8-28; Ex. C, Andorf Decl. ¶¶ (App. 1-29, 91-102).

Moreover, in a breach of contract case, courts consider where the contract was negotiated, performed, and breached.[34] In this case, the Website Terms provide that "any transactions carried out through the [Southwest Website] will be deemed to take place in the State of Texas."[35] Kiwi undisputedly knew the Website Terms governed its use of the Southwest Website. Southwest's Legal Department sent Kiwi multiple cease-and-desist notices, specifically pointing out examples of how Kiwi's conduct violated the Website Terms.[36] Kiwi acknowledged receipt of one such notice in an email response to Southwest's Legal Department in Dallas.[37] When Kiwi continued "to use the Southwest [Website] in connection with [Kiwi's] business" with actual knowledge of the Website Terms, Kiwi "bound itself to the contractual obligations imposed by the [Website] Terms."[38] Likewise, each time Kiwi purchases a ticket on the Southwest Website (over 170,000 times and counting), Kiwi affirmatively accepts the Website Terms,[39] forming a binding contract performable in this District.[40] Moreover, in connection with its unauthorized sales of Southwest flights, Kiwi even tells customers: "All services provided by Southwest Airlines are subject to their Terms and Conditions. More information is available on their website."[41] There can be no doubt that Kiwi accepted the Website Terms, including that all transactions are deemed to occur in the Northern District of Texas. Thus, transactional venue is proper in this District.

---

[34] *Snelling Employment, LLC v. Doc Johnson Enterprises*, 3:18-CV-0521-B, 2018 WL 3659067, at *3 (N.D. Tex. Aug. 2, 2018).

[35] *See* Injunction Appendix [D.I. 19] at Ex. A-3, Website Terms (App. 42).

[36] *See* Injunction Appendix [D.I. 19] at Ex. A-6, Cease and Desist Notice (App. 63-77).

[37] *See* Injunction Appendix [D.I. 19] at Ex. A-8, Kiwi Email dated Sept. 11, 2019 (stating "I've just been passed the Cease & Desist letter from your side") (App. 83).

[38] *See Sw. Airlines Co. v. BoardFirst, L.L.C.*, 3:06-CV-0891-B, 2007 WL 4823761, at *7 (N.D. Tex. Sept. 12, 2007).

[39] *See* Injunction Appendix [D.I. 19] at Ex. A, Hursh Decl. ¶¶ 21, 47 (App. 8, 22).

[40] *See, e.g.*, *Nevarez v. Forty Niners Football Co., LLC*, 16-CV-07013, 2017 WL 3492110, at *9 (N.D. Cal. Aug. 15, 2017); *Ticketmaster L.L.C. v. RMG Techs., Inc.*, 507 F. Supp. 2d 1096, 1107 (C.D. Cal. 2007).

[41] *See* Injunction Appendix [D.I. 19] at Ex. A, Hursh Decl. ¶ 29 (App. 11-12).

## C. Kiwi has not shown that the selected forum is unreasonable.

While proper venue under § 1391 exists independent of any venue clause in the Southwest Terms, Kiwi also has agreed to venue in this District. "A forum selection provision in a written contract is *prima facie* valid and enforceable unless the opposing party shows that enforcement would be unreasonable."[42] A defendant bears a "heavy burden of proof" in seeking to avoid a selected forum.[43] There is a "strong presumption in favor of forum selection clauses," and "a valid forum selection clause is given controlling weight in all but the most exceptional cases."[44] To avoid a selected forum, the defendant must prove unreasonableness by establishing one of the following: (1) the inclusion of the forum selection clause in the written contract was the product of fraud or overreaching; (2) the party opposing enforcement of the clause "will for all practical purposes be deprived of his day in court" because of the extreme inconvenience or unfairness of the forum specified in the clause; (3) the law specified in the clause is fundamentally unfair and will cause plaintiff to be deprived of a remedy; or (4) enforcement of the clause would go against a strong public policy of the forum state.[45] Kiwi has not asserted—must less proven—unreasonableness of the selected forum.

Instead, Kiwi argues that Southwest's ability to revise and update the Website Terms renders the forum-selection clause illusory. But Kiwi relies exclusively on cases addressing whether an *arbitration provision* in a contract is illusory if one party (usually an employer) retains

---

[42] *Kevlin Services, Inc. v. Lexington State Bank*, 46 F.3d 13, 15 (5th Cir. 1995) (citing *M/S Bremen v. Zapata Off-Shore Co*., 407 U.S. 1, 10 (1972)).

[43] *Mitsui & Co. (USA), Inc. v. MIRA M/V*, 111 F.3d 33, 35 (5th Cir. 1998) ("The burden of proving unreasonableness is a heavy one, carried only by a showing that the clause results from fraud or overreaching, that it violates a strong public policy, or that enforcement of the clause deprives the [resisting party] of his day in court.").

[44] *Calix-Chacon v. Global Int'l Marine, Inc*., 493 F.3d 507, 513 (5th Cir. 2007) (quoting *Stewart Org., Inc. v. Ricoh Corp*., 487 U.S. 22, 33 (1998) (Stewart, J., concurring)).

[45] See *Haynsworth v. The Corp*., 121 F.3d 956, 963 (5th Cir. 1997) (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991); and *M/S Bremen*, 407 U.S. at 12–13, 15, 18).

the right to unilaterally change or terminate the contract (usually an at-will employment contract) to *retroactively* deprive the other party (usually an at-will employee) of the right to arbitrate disputes arising before the date of the change.[46] Under those circumstances, an arbitration provision is valid only if the party retaining the right to amend or terminate "cannot avoid its promise to arbitrate by amending the provision or terminating it altogether."[47]

The *Carey/Halliburton* line of cases is inapplicable here. First and foremost, this case does not involve (and the Website Terms do not include) an arbitration provision. Nor is the constitutional right to a jury trial implicated.

Second, use of the Southwest Website is governed by the Website Terms *in effect at the time of the use*. According to the Website Terms, "changes are effective immediately when [Southwest] post[s] them," and "continued use of the Sites is [the user's] acceptance of the revised and updated Terms."[48] An updated version of the Website Terms thus applies to use after the change is posted, but not retroactively.

Third, the current version of the Website Terms has been in effect since April 4, 2017. Thus, Kiwi was always on notice of the Website Terms, including when Kiwi began its unauthorized commercial use of the Southwest Website and after Southwest sent Kiwi multiple cease-and-desist notices explaining its unlawful conduct and providing copies of the Website Terms. Kiwi continually renewed its agreement to abide by the Website Terms each time it accessed the Southwest Website and purchased a ticket.

---

[46] *See* Motion [D.I. 17] at 11 (citing *Carey v. 24 Hour Fitness, USA, Inc*., 669 F.3d 202, 205 (5th Cir. 2012); *In re 24R, Inc.*, 324 S.W.3d 564, 567 (Tex. 2010); and *Morrison v. Amway Corp*., 517 F.3d 248, 257 (5th Cir. 2008)).

[47] *In re Halliburton Co*., 80 S.W.3d 566, 570 (Tex. 2002).

[48] *See* Injunction Appendix [D.I. 19] at Ex. A-3,Website Terms (App. 40).

Fourth, the Website Terms include a severability provision, which requires a court to sever an "illegal or unconscionable provision of a contract … so long as it does not constitute the essential purpose of the agreement."[49] Thus, even if the language noting that Southwest may revise and update the Website Terms rendered other provisions illusory or unenforceable (it does not), the Website Terms require that the Court sever that "revision clause" and enforce the remaining terms of the agreement, including the forum-selection clause.

Kiwi attempts to analogize the *Carey/Halliburton* line of cases to Southwest's forum-selection clause but fails to cite any authority supporting that leap. For example, *In re AIU Ins. Co.*, cited by Kiwi for the proposition that "an arbitration agreement" is a "type of forum-selection clause," holds that "a forum clause should control absent a strong showing that it should be set aside" or "that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching."[50] Likewise, *Barnett v. DynCorp Int'l, L.L.C.*,[51] cited by Kiwi for the proposition that an arbitration clause is "in effect, a specialized kind of forum-selection clause," also repeats "*Bremen's* instruction that forum-selection clauses are prima facie *valid* and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances."[52] These cases thus *support* enforceability of the forum-selection provision. And neither *AIU* nor *Barnett* discusses or justifies extending the law concerning illusory arbitration provisions to other types of contractual provisions. In the end, Kiwi offers no authority supporting its assertion that "if the contract's terms permit the forum-selection

---

[49] *Venture Cotton Co-op. v. Freeman*, 435 S.W.3d 222, 230 (Tex. 2014) (quoting *In re Poly-Am., L.P.*, 262 S.W.3d 337, 360 (Tex. 2008)); see RESTATEMENT (SECOND) OF CONTRACTS § 208 cmt. g (if "a term rather than the entire contract is unconscionable, the appropriate remedy is ordinarily to deny effect to the unconscionable term.").

[50] 148 S.W.3d 109, 112 (Tex. 2004) (quoting *M/S Bremen*, 407 U.S. at 15).

[51] 831 F.3d 296, 302 (5th Cir. 2016).

[52] *Id.* (quoting *Int'l Software Sys., Inc. v. Amplicon, Inc.*, 77 F.3d 112, 114 (5th Cir. 1996)).

clause to be amended retroactively, then the purported agreement as to the forum for resolving disputes is illusory."[53] Indeed, Kiwi has not cited, and Southwest has not found, any law supporting Kiwi's argument.

**D. Southwest requests the opportunity to replead if necessary.**

Southwest has presented the Court with uncontroverted allegations and evidence establishing that venue is proper in this District. However, if the Court finds that proper venue requires additional allegations or proof, Southwest respectfully requests that the Court allow Southwest to amend its Complaint to include further allegations concerning the amounts of Kiwi's sales, solicitations, communications, and activities within this District.

## IV. CONCLUSION

Kiwi waived its venue challenge by consenting to this Court's personal jurisdiction. Moreover, venue is proper in this District under § 1391(b)(1) and (b)(2) due to Kiwi's substantial commercial activities in this District, including accessing and scraping of data from Southwest's servers in this District, purchasing over 170,000 flights from Southwest in this District, and breaching the Website Terms in this District. Furthermore, Kiwi has not proven that this is an "unreasonable" forum. Accordingly, Kiwi's motion to dismiss should be denied. Finally, Southwest requests all other relief to which it is entitled.

[53] *See* Motion [D.I. 17] at 12.

Respectfully submitted,

By: */s/ Michael C. Wilson*

Michael C. Wilson
Texas State Bar No. 21704590
mwilson@munckwilson.com
S. Wallace Dunwoody
Texas Bar. No. 24040838
wdunwoody@munckwilson.com
Amanda K. Greenspon
Florida Bar No. 1014584
agreenspon@munckwilson.com
Julie M. Christensen
Texas State Bar No. 24105601
jchristensen@munckwilson.com
**MUNCK WILSON MANDALA, LLP**
12770 Coit Road, Suite 600
Dallas, Texas 75251
Telephone: (972) 628-3600

**ATTORNEYS FOR PLAINTIFF SOUTHWEST AIRLINES CO.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served on all counsel of record by ECF on February 26, 2021.

*/s/ Michael C. Wilson*
Michael C. Wilson

876644