**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **SOUTHWEST AIRLINES CO.,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:21-cv-00098-E** |
| | § | |
| **KIWI.COM, INC. and KIWI.COM S.R.O.,** | § | |
| | § | |
| | § | |
| **Defendants.** | § | |

**PLAINTIFF SOUTHWEST AIRLINES CO.'S REPLY IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION AND BRIEF IN SUPPORT**

Michael C. Wilson
Texas State Bar No. 21704590
mwilson@munckwilson.com
S. Wallace Dunwoody
Texas Bar. No. 24040838
wdunwoody@munckwilson.com
Amanda K. Greenspon
Florida Bar No. 1014584
agreenspon@munckwilson.com
Julie M. Christensen
Texas State Bar No. 24105601
jchristensen@munckwilson.com
**MUNCK WILSON MANDALA, LLP**
12770 Coit Road, Suite 600
Dallas, Texas 75251
Telephone: (972) 628-3600

**ATTORNEYS FOR PLAINTIFF SOUTHWEST AIRLINES CO.**

**TABLE OF CONTENTS**


I. INTRODUCTION ..... 1

II. ARGUMENTS AND AUTHORITIES ..... 2

A. Southwest is likely to succeed on the merits of its breach of contract claim ..... 2

1. Kiwi accepted the Website Terms. ..... 2

2. Kiwi has not shown that the Website Terms are unenforceable. ..... 3

B. The failure to grant an injunction will result in irreparable injury. ..... 4

1. Southwest has not unreasonably delayed in seeking relief. ..... 4

2. Kiwi's conduct is harmful to Southwest and its customers. ..... 7

C. The injury to Southwest outweighs any damage the injunction will cause to Kiwi. ..... 8

D. An injunction will serve the public interest. ..... 9

E. Kiwi's bond request of $9.6 million is grossly excessive. ..... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ADT, LLC v. Capital Connect, Inc.*,
145 F. Supp. 3d 671 (N.D. Tex. 2015) ....................6, 8

*Advanced Commc'n Design, Inc. v. Premier Retail Networks, Inc.*,
46 Fed. Appx. 964 (Fed. Cir. 2002)....................6

*BHL Boresight, Inc. v. Geo-Steering Sols., Inc.*,
No. 4:15-cv-627, 2016 WL 8648927 (S.D. Tex. Mar. 29, 2016) ....................2

*Caldwell v. Barnes*,
975 S.W.2d 535 (Tex. 1998)....................4

*Canal Auth. of State of Fla. v. Callaway*,
489 F.2d 567 (5th Cir. 1974) ....................1

*Corp. Relocation, Inc. v. Martin*,
No. 3:06-CV-232-L, 2006 WL 4101944 (N.D. Tex. Sept. 12, 2006)....................10

*Daily Instruments Corp. v. Heidt*,
998 F. Supp. 2d 553 (S.D. Tex. 2014) ....................6

*Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*,
710 F.3d 579 (5th Cir. 2013) ....................10

*DHI Grp. v. Kent*,
No. H-16-1670, 2017 WL 8794877 (S.D. Tex. Apr. 21, 2017)....................2

*Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
961 F.2d 1148 (5th Cir. 1992) ....................4

*Dillard v. Sec. Pac. Corp.*,
No. 95-20503, 1996 WL 254971 (5th Cir. 1996) ....................6

*Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*,
269 F.3d 1149 (10th Cir. 2001) ....................1

*Emmanuel v. Handy Techs., Inc.*,
20-1378, 2021 WL 1084688 (1st Cir. Mar. 22, 2021)....................3

*Flywheel Fitness, LLC v. Flywheel Sports, Inc.*,
4:13-CV-48, 2013 WL 12138593 (E.D. Tex. Feb. 6, 2013)....................6

*Gonannies, Inc. v. Goupair.Com, Inc.*,
464 F. Supp. 2d 603 (N.D. Tex. 2006) .......................................................................6

*Green v. Parrack*,
974 S.W.2d 200 (Tex. App.—San Antonio 1998, no pet.)......................................................4

*Capstone Healthcare Equip. Services, Inc. ex rel. Health Sys. Group, L.L.C. v. Quality Home Health Care, Inc.*,
295 S.W.3d 696 (Tex. App.—Dallas 2009, pet. denied)........................................................4

*hiQ Labs, Inc. v. LinkedIn Corp.*,
938 F.3d 985 (9th Cir. 2019) ..........................................................................2, 4, 9

*Jiffy Lube Int'l, Inc. v. Weiss Bros. Inc.*,
834 F. Supp. 683 (D.N.J. 1993) .............................................................................8

*Kauders v. Uber Techs., Inc.*,
486 Mass. 557, 159 N.E.3d 1033 (2021) ....................................................................3

*KeyCorp v. Holland*,
3:16-CV-1948-D, 2017 WL 345645 (N.D. Tex. Jan. 24, 2017).............................................6

*Lake Charles Diesel, Inc. v. Gen. Motors Corp.*,
328 F.3d 192 (5th Cir. 2003) ..............................................................................1

*Leaf Trading Cards, LLC v. Upper Deck Co.*,
3:17-CV-3200-N, 2019 WL 7882552 (N.D. Tex. Sept. 18, 2019)...........................................6

*Mary Kay, Inc. v. Weber*,
661 F. Supp. 2d 632 (N.D. Tex. 2009) ....................................................................10

*Millennium Rests. Grp., Inc. v. City of Dallas*,
181 F. Supp. 2d 659 (N.D. Tex. 2001) .....................................................................7

*Nader v. Allegheny Airlines, Inc.*,
426 U.S. 290 (1976)........................................................................................10

*In re Oakwood Mobile Homes, Inc.*,
987 S.W.2d 571 (Tex. 1999)..................................................................................3

*In re Online Travel Co.*,
953 F. Supp. 2d 713 (N.D. Tex. 2013) .....................................................................3

*In re Palm Harbor Homes, Inc.*,
195 S.W.3d 672 (Tex. 2006)..................................................................................4

*Phillips v. Neutron Holdings, Inc.*,
No. 3:18-CV-3382-S, 2019 WL 4861435 (N.D. Tex. Oct. 2, 2019) ......................................3

*PIU Mgmt., LLC v. Inflatable Zone Inc.*,
CIV.A. H-08-2719, 2010 WL 681914 (S.D. Tex. Feb. 25, 2010)............................................6

*Recursion Software, Inc. v. Interactive Intel., Inc.*,
425 F. Supp. 2d 756 (N.D. Tex. 2006) ......................................................................3

*Scrum All., Inc. v. Scrum, Inc.*,
4:20-CV-00227, 2020 WL 4016110 (E.D. Tex. July 16, 2020)...............................................6

*Sparrow Barns & Events, LLC v. Ruth Farm Inc.*,
No. 4:19-CV-00067, 2019 WL 1560442 (E.D. Tex. Apr. 10, 2019)........................................7

*Sw. Airlines Co. v. BoardFirst, L.L.C.*,
3:06-CV-0891-B, 2007 WL 4823761 (N.D. Tex. Sept. 12, 2007) .............................1, 2, 3, 10

*TGI Friday's Inc. v. Great Nw. Restaurants, Inc.*,
652 F. Supp. 2d 763 (N.D. Tex. 2009) ......................................................................8

*U.S. v. John*,
597 F.3d 263 (5th Cir. 2010) ......................................................................2

*Verizon Com'ns. Inc. v. Law Offices of Curtis V. Trinko, LLP*,
540 U.S. 398 (2004)......................................................................9

**Statutes**

49 U.S.C. § 41712......................................................................1, 7

TEX. CIV. PRAC. & REM. CODE § 16.004 ......................................................................4

**Other Authorities**

14 C.F.R. § 256.1(a)......................................................................10

14 C.F.R. § 256.6......................................................................1, 7, 10

## I. INTRODUCTION

This is not a case involving unreasonable delay in seeking injunctive relief. In late 2020, as Southwest tried to recover from the crippling effects of the pandemic, its leadership teams were flooded with complaints from its frontline employees (i.e., customer service and ground operations) about problems caused by Kiwi's unauthorized sales of Southwest flights. During the ensuing investigation, Southwest learned that Kiwi was cheating customers on refunds, advertising disruptive "hidden city" flights that cause operational delays, and engaging in unfair and deceptive practices. Kiwi's conduct violates the Website Terms and federal law,[1] and causes irreparable harm to Southwest's business, reputation, and its brand. Over the last month, Southwest has deployed technological solutions to block Kiwi's unauthorized scraping and sales, but Kiwi continues to hack and evade those security measures. An injunction is necessary to stop Kiwi's unlawful activities from causing further irreparable harm to Southwest and its customers.[2]

Kiwi *admits* that it is violating the Website Terms,[3] yet asserts that it never agreed to the Website Terms. Under this Court's prior decisions, Kiwi's repeated use of the Southwest Website with actual knowledge of the Website Terms constituted acceptance.[4] The cases Kiwi cites do not change that result. Kiwi tries to distance itself from the breach of contract issue by arguing that

---

[1] *See* 49 U.S.C. § 41712(a) (prohibiting any such "unfair or deceptive practice or an unfair method of competition in air transportation or the sale of air transportation."); 14 C.F.R. § 256.6 (allowing carriers to restrict sales of flights).

[2] Kiwi incorrectly argues that Southwest seeks to alter the status quo with a mandatory injunction. [D.I. 28] at 1. That is wrong. The requested injunction is prohibitory and preserves the last *uncontested* status. *See Lake Charles Diesel, Inc. v. Gen. Motors Corp.*, 328 F.3d 192, 196 (5th Cir. 2003); *Canal Auth. of State of Fla. v. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974); *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1155 (10th Cir. 2001).

[3] [D.I. 28] at 1 ("Kiwi.com has been collecting and publishing Southwest's … flight data…"), 6 ("Kiwi.com booked over 100,000 Southwest flights in 2019 alone."), 7 (after receiving cease-and-desist notices, "Kiwi.com continued to list Southwest flight information and to book Southwest flights on behalf of Kiwi.com customers.").

[4] *See Sw. Airlines Co. v. BoardFirst, L.L.C.*, 3:06-CV-0891-B, 2007 WL 4823761, at *7 (N.D. Tex. Sept. 12, 2007) (holding defendant had actual knowledge of website terms after receiving cease and desist letter).

*hiQ*'s analysis of the CFAA applies here.[5] Not only does the Fifth Circuit disagree with the Ninth Circuit on the CFAA issue,[6] Southwest's motion for injunctive relief is based on its ***breach of contract*** claim—***not*** the CFAA.[7] While Kiwi suggests that an injunction poses "a significant threat to its business," Southwest flights account for a tiny fraction (about 0.5%) of Kiwi's €1.3 billion in annual sales. Moreover, the equities of the situation dictate that Kiwi cannot be allowed to continue hacking the Southwest Website, selling Southwest's services without permission, and doing so in a deceptive manner that violates federal law, disrupts operations, and damages Southwest's brand. Southwest has proven it is likely to succeed on the merits and that an injunction is necessary to prevent ongoing irreparable harm. Thus, an injunction is warranted.[8]

## II. ARGUMENTS AND AUTHORITIES

### A. Southwest is likely to succeed on the merits of its breach of contract claim.

#### 1. Kiwi accepted the Website Terms.

The Website Terms specify that "*[u]se* of the Southwest websites and our Company Information constitutes acceptance of [the Website Terms]."[9] Under *BoardFirst*, Kiwi "bound itself to the contractual obligations imposed by the Terms" by continuing "to use the Southwest site in connection with its business" with "actual knowledge of the Terms."[10] Kiwi cites a

[5] *hiQ* did not decide the issue of whether scraping "public data" from a website can violate the CFAA—it found that hiQ raised "serious questions about whether LinkedIn may invoke the CFAA." *hiQ Labs, Inc. v. LinkedIn Corp.*, 938 F.3d 985, 1003-4 (9th Cir. 2019). There is a circuit split on this issue.

[6] The Fifth Circuit has held that "agreement[s] can establish the parameters of 'authorized' access" under the CFAA while recognizing "the Ninth Circuit may have a different view." *U.S. v. John*, 597 F.3d 263, 271-72 (5th Cir. 2010); *see also DHI Grp. v. Kent*, No. H-16-1670, 2017 WL 8794877, at *6-8 (S.D. Tex. Apr. 21, 2017) (finding that "scraping of *publicly available data* from Oilpro's website in violation of its terms" violated the CFAA); *BHL Boresight, Inc. v. Geo-Steering Sols., Inc.*, No. 4:15-cv-627, 2016 WL 8648927, at *16, n.8 (S.D. Tex. Mar. 29, 2016).

[7] *hiQ* acknowledges that other legal theories, "such as … breach of contract," may bar web scraping. *Id.* at 1004.

[8] Southwest requests an evidentiary hearing and, per the Court's rules, will confer with Kiwi on this request.

[9] [D.I. 19-1] at App. 8, 40.

[10] *BoardFirst*, 2007 WL 4823761, at *7.

hodgepodge of cases to argue that its breach of the Website Terms "embodies a rejection of the offered terms and a counteroffer of a contract excluding them."[11] None of the cited cases support the idea that an immediate breach negates assent.[12] Kiwi never repudiated the Website Terms and has continued to use the Southwest Website in violation of the Website Terms. Additionally, each time Kiwi purchases a ticket, it accepts the Website Terms.[13] Kiwi argues that no person really sees or clicks the "Purchase" button because Kiwi.com interacts with an application programming interface ("API").[14] But there is more to the story. Kiwi only recently began hacking the Southwest API after Southwest blocked Kiwi's bots from scraping data from the "front end" of the Southwest Website in February 2020.[15] Before then, Kiwi was using automated scripts to click the "Purchase" button.[16] Kiwi's new API-hack-and-attack strategy still uses the Southwest Website and violates the Website Terms.[17] It is beyond debate: Kiwi is knowingly violating the Website Terms.

**2. Kiwi has not shown that the Website Terms are unenforceable.**

Kiwi refers to the Website Terms as a "contract of adhesion," but such "contracts are not automatically unconscionable or void."[18] Rather, "the party seeking to avoid the contract generally

---

[11] [D.I. 28] at 21.

[12] [D.I. 28] at 21-22 (citing *see, e.g.*, *Effel v. McGarry*, 339 S.W.3d 789, 792-93 (Tex. App.—Dallas 2011, pet. denied); *Wal-mart Stores, Inc. v. Lopez*, 93 S.W.3d 548, 557 (Tex. App.—Houston [14th Dist.] 2002, no pet.)). *Emmanuel* and *Kaunders* both confirm that use with "actual notice" or clicking "Agree" constitutes acceptance. *Kauders v. Uber Techs., Inc.*, 486 Mass. 557, 573, 159 N.E.3d 1033, 1049-51 (2021) (distinguishing "sophisticated parties [with] legal counsel" in considering whether consumer-plaintiffs had "reasonable notice" of online terms and conditions; also distinguishing "click-wrap" agreements); *Emmanuel v. Handy Techs., Inc.*, 20-1378, 2021 WL 1084688, at *5 (1st Cir. Mar. 22, 2021); *accord BoardFirst*, 2007 WL 4823761, at *4.

[13] This type of "click-wrap" agreement is valid under Texas law. *See, e.g.*, *Phillips v. Neutron Holdings, Inc.*, No. 3:18-CV-3382-S, 2019 WL 4861435, at *3 (N.D. Tex. Oct. 2, 2019); *In re Online Travel Co.*, 953 F. Supp. 2d 713, 719 (N.D. Tex. 2013); *Recursion Software, Inc. v. Interactive Intel., Inc.*, 425 F. Supp. 2d 756, 783 (N.D. Tex. 2006).

[14] [D.I. 28] at 4.

[15] [D.I. 33-2] at Ex. G, Erdman Decl. ¶¶ 4-14 (App. 573-76).

[16] [D.I. 33-2] at Ex. G, Erdman Decl. ¶¶ 4-5 (App. 573-74); [D.I. 19-1] at Ex. A, Hursh Decl. ¶¶ 19-22 (App. 7-9).

[17] [D.I. 33-2] at Ex. G, Erdman Decl. ¶ 7-14 (App. 574-76).

[18] [D.I. 28] at 18; *In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 574 (Tex. 1999), abrogated on other grounds by *In re Halliburton Co.*, 80 S.W.3d 566 (Tex. 2002).

must show that it is unconscionable."[19] Kiwi has not done so. Relying on *hiQ*, Kiwi argues that the "consensus has shifted" on whether unauthorized scraping of public data violates the CFAA.[20] First, that is not true.[21] Second, *hiQ* specifically notes that a ***contract*** may bar unauthorized scraping.[22] Third, Southwest seeks injunctive relief based on its ***contract*** claim, not the CFAA. Fourth, the data at issue is not "public data"; it is proprietary data that Southwest makes available subject to specific use restrictions.[23] Kiwi also argues that its unpled affirmative defenses—limitations and laches—make the Website Terms unenforceable.[24] But the limitations period for a contract claim is four years,[25] meaning "four years from each breach to bring suit."[26] The Website Terms took effect in April 2017, less than four years before the date of suit.[27] "Laches should not bar an action on which limitations has not run,"[28] and "does not apply where the defendant has acted in open and known hostility to a plaintiff's rights."[29]

**B. The failure to grant an injunction will result in irreparable injury.**

**1. Southwest has not unreasonably delayed in seeking relief.**

Kiwi argues that Southwest "waited five and a half years to seek an injunction."[30] But that distorts the facts and overlooks recent events that are causing irreparable harm. Southwest sent a

---

[19] *Dillard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 961 F.2d 1148, 1154 (5th Cir. 1992); *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 677 (Tex. 2006) ("Substantive unconscionability refers to the fairness of the … provision itself, whereas procedural unconscionability refers to the circumstances surrounding adoption.").

[20] [D.I. 28] at 18-20.

[21] *See supra* notes 5 and 6.

[22] *hiQ*, 938 F.3d at 1004.

[23] *See* [D.I. 19-1] at App. 40-41.

[24] [D.I. 28] at 24.

[25] *See* TEX. CIV. PRAC. & REM. CODE § 16.004.

[26] Capstone *Healthcare Equip. Services, Inc. ex rel. Health Sys. Group, L.L.C. v. Quality Home Health Care, Inc.*, 295 S.W.3d 696, 700 (Tex. App.—Dallas 2009, pet. denied).

[27] [D.I. 1] (Complaint filed in January 2021); [D.I. 19-1] at App. 40 (Website Terms effective April 4, 2017).

[28] *Caldwell v. Barnes*, 975 S.W.2d 535, 538 (Tex. 1998).

[29] *Green v. Parrack*, 974 S.W.2d 200, 204 (Tex. App.—San Antonio 1998, no pet.).

[30] [D.I. 28] at 1.

cease-and-desist letter to a company called "SkyPicker.com s.r.o." in September 2015,[31] but received no response.[32] Likewise, the 2017 notice submitted through the Kiwi.com email portal was ignored,[33] as was a 2018 email sent to "info@kiwi.com."[34] When Kiwi.com finally responded to a notice in September 2019, Southwest rejected Kiwi's proposal of "a direct co-operation,"[35] and reiterated that it "[does] not allow any third-party websites to display our fares or logos."[36]

Those prior communications were based on unauthorized scraping of the Southwest Website and unfair use of Southwest's trademarks. But the situation fundamentally changed in late 2020, when Southwest leadership began receiving escalated reports from ground operation and customer service personnel about angry customers not receiving refunds and disruptive "hidden-city" fares. The reports in late 2020 had a common theme: they arose from bookings through Kiwi.com. Southwest's ensuing investigation revealed that Kiwi was causing other problems like (i) fraudulent and deceptive advertisements; (ii) customer confusion; (iii) customer communication problems from not having customer contact information; (iv) flight delays and misrouted baggage from "hidden city" fares where Kiwi misrepresents the travel itinerary when selling the ticket; and (v) strains on ground operations and customer service personnel.[37]

Contrary to Kiwi's delay narrative, Southwest promptly took action to protect its rights against irreparable harm. After sending a cease-and-desist letter in December 2020—*the first such*

---

[31] [D.I. 29] at App. 013.

[32] SkyPicker was not affiliated with Kiwi in 2015.

[33] [D.I. 29] at App. 017.

[34] [D.I. 29] at App. 021.

[35] [D.I. 19-1] at App. 083.

[36] [D.I. 29] at App. 025.

[37] [D.I. 19-1] at Ex. D, Obrenic Decl. ¶¶ 11-28 (App. 432-34); [D.I. 19-1] at Ex. D-2 to D-17, Recent Records of Problems with Kiwi Hidden City Fares (App. 449-93); [D.I. 33-3] at Ex. H, Shaw Decl. ¶¶ 3-18 (App. 578-583); [D.I. 33-5] at Ex. I, Hartsfield Decl. ¶¶ 2-6 (App. 645-46).

*notice sent to Kiwi.com, Inc.*—Southwest filed suit weeks later in January 2021, tried to negotiate an agreed injunction, then moved for an injunction in February 2021. While litigants are expected to act reasonably quickly to protect their rights, a delay "standing alone" is insufficient to "demonstrate the absence of irreparable harm."[38] It is "a single factor in the irreparable harm balancing inquiry."[39] And the effect of delay is conditional: "*Absent a good explanation*," it shows "no apparent urgency to the request for injunctive relief."[40] If the circumstances justify an injunction, a "decent although not [] ideal explanation" can excuse delay.[41] In the cases Kiwi cites, where an injunction was denied based on delay, substantial time elapsed between filing the lawsuit and seeking an injunction, the grounds for the injunction were weak, and there was no explanation or evidence offered to excuse the delay.[42] Here, Kiwi *admits* it is violating the Website Terms, and there is substantial evidence that the reputational problems surfaced in late November 2020—less than two months before Southwest filed suit,[43] and escalated over the last month as Southwest took steps to block Kiwi's bots and Kiwi started hacking the API to circumvent those measures.[44] These problems are recent; they are ongoing; and they show why an injunction is necessary now.

---

[38] *Advanced Commc'n Design, Inc. v. Premier Retail Networks, Inc.*, 46 Fed. Appx. 964, 984 (Fed. Cir. 2002).

[39] *Advanced Commc'n Design*, 46 Fed. Appx. at 984.

[40] *See, e.g., ADT, LLC v. Capital Connect, Inc.*, 145 F. Supp. 3d 671, 698 (N.D. Tex. Sept. 28, 2015).

[41] *Daily Instruments Corp. v. Heidt*, 998 F. Supp. 2d 553, 571 (S.D. Tex. 2014); *see, e.g., Scrum All., Inc. v. Scrum, Inc.*, 4:20-CV-00227, 2020 WL 4016110, at *16 (E.D. Tex. July 16, 2020) (delay excused where the defendants' conduct reached a "critical threshold"); *ADT*, 145 F. Supp. at 698 (delay excused due to good faith investigation)*; KeyCorp v. Holland*, 3:16-CV-1948-D, 2017 WL 345645, at *6 (N.D. Tex. Jan. 24, 2017) (delay excused to pursue an investigation, conduct pre-suit discovery, and participate in settlement negotiations); *PIU Mgmt., LLC v. Inflatable Zone Inc.*, CIV.A. H-08-2719, 2010 WL 681914, at *6 (S.D. Tex. Feb. 25, 2010) (delay excused where there were demand letters and settlement discussions).

[42] *See, e.g., Dillard v. Sec. Pac. Corp.*, No. 95-20503, 1996 WL 254971, at *4 (5th Cir. 1996); *Leaf Trading Cards, LLC v. Upper Deck Co.*, 3:17-CV-3200-N, 2019 WL 7882552, at *2 (N.D. Tex. Sept. 18, 2019); *Flywheel Fitness, LLC v. Flywheel Sports, Inc.*, 4:13-CV-48, 2013 WL 12138593, at *4 (E.D. Tex. Feb. 6, 2013); *Gonannies, Inc. v. Goupair.com, Inc.*, 464 F. Supp. 2d 603, 609 (N.D. Tex. Dec. 7, 2006).

[43] *See* [D.I. 19-1] Ex. D, Obrenic Decl. ¶¶ 11-28 (App. 432-34); *See* [D.I. 19-1] Exs. D-2 – D-17 (App. 449-93); *see also*, [D.I. 33-3] at Ex. H, Shaw Decl. ¶¶ 8-9 (App. 580); [D.I. 33-5] at Ex. I, Hartsfield Decl. ¶ 2 (App. 645).

[44] [D.I. 33-2] at Ex. G, Erdman Decl. ¶¶ 7-9 (App. 574-75).

**2. Kiwi's conduct is harmful to Southwest and its customers.**

There is no escaping the fact that customers can—and do—associate Southwest's services with the party selling them. This non-consensual relationship with Kiwi, forced on Southwest over its objection and best efforts to stop it, is unlawful and is causing irreparable harm to Southwest's business, its reputation, and its customers.[45] Southwest is not required "to allow a system to access its internal computer reservation system or to permit 'screen scraping' or 'content scraping' of its Web site," nor is Southwest required "to permit the marketing or sale of the carrier's services through any ticket agent or other carrier's system."[46]

Southwest is ultimately responsible for sales of its flights and services. But no guardrails are in place with Kiwi. Southwest loses control over its brand and how its services are advertised. Southwest has no front-end contact with the customer because Kiwi uses its own email addresses and credit cards to book the flights, thereby interfering with time-sensitive communications and refunds. Federal law prohibits any "unfair or deceptive practice or an unfair method of competition in air transportation or the sale of air transportation,"[47] yet Southwest has no control over Kiwi (i) selling its services at inflated prices with extra fees; (ii) misrepresenting its policies to sell extra "services," such as checked baggage and customer service, that are available for free; (iii) selling misleading "hidden city" fares—purposefully misrepresenting the passenger itinerary—causing

---

[45] *See Millennium Rests. Grp., Inc. v. City of Dallas*, 181 F. Supp. 2d 659, 666 (N.D. Tex. 2001); *Sparrow Barns & Events, LLC v. Ruth Farm Inc.*, No. 4:19-CV-00067, 2019 WL 1560442, at *8 (E.D. Tex. Apr. 10, 2019).

[46] 14 C.F.R. § 256.6.

[47] 49 U.S.C. § 41712(a); *see also id.* §§ 41712(c)(1)-(2) (requiring any "person offering to sell tickets for air transportation" to disclose "the name of the air carrier providing the air transportation … on the first display of the Web site following a search of a requested itinerary in a format that is easily visible to a viewer.").

delays, confusion, and complaints; and (iv) not disclosing its identity when advertising the fare. All of this causes irreparable harm to Southwest.[48]

**C. The injury to Southwest outweighs any damage the injunction will cause to Kiwi.**

Kiwi argues that "the threat of further injunctions against brokering ticket sales poses a potentially existential threat to Kiwi.com's US operation."[49] But Kiwi offers no evidence showing that other injunctions are threatened or likely. The record does not support the notion that "Kiwi.com faces a significant threat to its business model, reputation, and partner relationships if an injunction were granted."[50] Kiwi does not identify any "partner relationships" at risk. In fact, Kiwi sells flights for many other carriers,[51] and does not list Southwest in its "top 20 airlines."[52] Southwest flights account for about 0.5% of Kiwi's annual sales of €1.3 billion.[53] Kiwi provides no meaningful analysis of how an injunction would impact its business because most Kiwi customers will simply book flights with other carriers. Moreover, any lost sales stemming from knowing violations of federal law and the Website Terms are entitled to little consideration.[54]

Kiwi argues that "an injunction will drastically affect the ability of Kiwi.com to build dynamic travel itineraries for its customers" because Southwest supposedly controls "100% of the airline traffic" in hundreds of routes, and "it is literally impossible to travel by air without traveling

---

[48] Kiwi argues that harm to customers is irrelevant to the analysis. That is not true. It is *Southwest's* name and reputation on the line. Kiwi's unfair and deceptive practices cause irreparable harm to Southwest and its customers. *See ADT*, 145 F. Supp. 3d 697-98 (finding irreparable harm where the plaintiff "lost control of its brand" and was "powerless to control its reputation and place in the market" because the defendant was "disrupting … customer relations through misleading sale pitches").

[49] [D.I. 28] at 13.

[50] [D.I. 28] at 13.

[51] [D.I. 28] at 13.

[52] *See* Kiwi Website available at https://partners.kiwi.com/technology-services/b2b-partnership-model/.

[53] *See* Kiwi Website available at https://www.kiwi.com/en/pages/content/company.

[54] *See TGI Friday's Inc. v. Great Nw. Restaurants, Inc.*, 652 F. Supp. 2d 763, 773 (N.D. Tex. 2009); *Jiffy Lube Int'l, Inc. v. Weiss Bros. Inc.*, 834 F. Supp. 683, 693 (D.N.J. 1993).

Southwest."[55] That claim is unsupported and misleading. There may be routes where Southwest is the only carrier offering a *direct* flight between specific airports; but connecting flights with other carriers are available; and other carriers offer direct flights along the same routes to other airports (e.g., to Dallas DFW instead of DAL, or to Chicago ORD instead of MDW). Kiwi has not shown that Southwest has a monopoly on any route,[56] that Kiwi sells any flights along such a route, or that halting such sales would have any significant impact on Kiwi.[57] The reality is that an injunction poses no risk to Kiwi's business because it sells flights for many other carriers.

On the balance of harms to Southwest, Kiwi argues that the injuries it is inflicting on Southwest have been "ongoing for the past seven years"[58] and were never reported as "material" in SEC filings.[59] That is not the standard for determining whether irreparable harm exists, and the problems with operational disruptions from "hidden city" flights, cheating customers on refunds, and hacking the Southwest Website are recent and escalating. Because Kiwi has no right to continue its unlawful sales of Southwest flights, the balance of harms strongly favors Southwest.

**D. An injunction will serve the public interest.**

Kiwi argues public policy requires that Southwest allow OTAs to sell its flights. But that issue was debated and decided by enabling legislation that allow a carrier to prohibit scraping of flight/fare information on its website and restrict sales of its services to "prevent unfair or deceptive

---

[55] [D.I. 28] at 14.

[56] "[T]he Sherman Act does not restrict the long recognized right of [a] trader or manufacturer engaged in an entirely private business, freely to exercise his own independent discretion as to parties with whom he will deal." *Verizon Com'ns. Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 408 (2004).

[57] Whereas hiQ's entire business model was dependent on access to user profile data that LinkedIn "specifically disclaim[ed] ownership of," *hiQ*, 938 F.3d at 989-90, Kiwi sells flights for many other carriers, and Southwest owns the proprietary data at issue and places specific restrictions on its use. *See* [D.I. 19-1] at Appx. 40-41.

[58] [D.I. 28] at 12-13.

[59] [D.I. 28] at 13.

practices in the distribution and sale of air transportation."[60] Such rules exist to "protect[] the public interest."[61] The convenience of one-stop shopping comes at a price—it drives a wedge between the service provider and customer, opening the door for unfair and deceptive practices that do more harm than good. Kiwi's egregious business tactics illustrate that point. Each time Southwest sells a flight, its reputation is on the line. It "serves the public interest" for Southwest "to be able to protect its public image" by controlling how its services are advertised and sold.[62] The public interest is not served by Kiwi hacking the Southwest Website, misappropriating Southwest's data, selling Southwest's services in an unfair and deceptive manner, cheating customers on refunds, and disrupting Southwest's operations. Kiwi's practices are illegal,[63] and "the public is served when the law is followed."[64] And "the public has an interest in seeing contractual arrangements," such as the Website Terms, "enforced."[65] Accordingly, an injunction will serve the public interest.

### E. Kiwi's bond request of $9.6 million is grossly excessive.

Kiwi's bond request—based on "projected" profits *over the next four years*—is grossly excessive. Kiwi has no legal right to sell Southwest flights, so the risk of a wrongful injunction is small. It should not take four years to resolve this case, and Kiwi's customers will still book flights with other carriers. A smaller bond—in the range of $10,000—is appropriate.

[60] 14 C.F.R. § 256.1(a); 14 C.F.R. § 256.6.

[61] *Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 301 (1976).

[62] *Mary Kay, Inc. v. Weber*, 661 F. Supp. 2d 632, 640 (N.D. Tex. 2009).

[63] *See supra*, II.B.2.

[64] *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 585 (5th Cir. 2013).

[65] *BoardFirst*, 2007 WL 4823761, at *18; *see also Corp. Relocation, Inc. v. Martin*, No. 3:06-CV-232-L, 2006 WL 4101944, at *18 (N.D. Tex. Sept. 12, 2006) ("[T]he public has an interest in knowing ... that persons who breach their agreements may not profit or otherwise benefit from such conduct.").

Date: April 16, 2021

Respectfully submitted,

By: */s/ Michael C. Wilson*

**MICHAEL C. WILSON**
Texas State Bar No. 21704590
mwilson@munckwilson.com
**S. WALLACE DUNWOODY**
Texas State Bar No. 24040838
wdunwoody@munckwilson.com
**AMANDA K. GREENSPON**
Florida Bar No. 1014584
agreenspon@munckwilson.com
**JULIE M. CHRISTENSEN**
jchristensen@munckwilson.com
Texas State Bar No. 24105601
**MUNCK WILSON MANDALA, LLP**
600 Banner Place Tower
12770 Coit Road
Dallas, Texas 75251
Telephone: 972-628-3600

**ATTORNEYS FOR PLAINTIFF SOUTHWEST AIRLINES CO.**

**CERTIFICATE OF SERVICE**

I hereby certify that on a true and correct copy of the foregoing document has been served on all counsel of record via the Court's electronic filing system, pursuant to the Federal Rules of Civil Procedure, on April 16, 2021.

*/s/ Michael C. Wilson*
Michael C. Wilson

882495