```
 1                  IN THE UNITED STATES DISTRICT COURT

 2                  FOR THE NORTHERN DISTRICT OF TEXAS

 3                          DALLAS DIVISION

 4

 5   SOUTHWEST AIRLINES CO.,        ) 3:21-CV-00098-E
                                    )
 6                  Plaintiff,      )
                                    )
 7   VS.                            ) DALLAS, TEXAS
                                    )
 8   KIWI.COM, INC., ET AL,         )
                                    )
 9                  Defendants.     ) JULY 13, 2021

10

11

12

13

14                 ------------------------------

15                         TRANSCRIPT OF

16                    SCHEDULING CONFERENCE

17                           VOLUME 1

18            BEFORE THE HONORABLE ADA E. BROWN

19               UNITED STATES DISTRICT JUDGE

20                 ------------------------------

21

22

23

24

25
```

```
 1                    A P P E A R A N C E S

 2   FOR THE PLAINTIFF:

 3           MICHAEL C. WILSON
             JULIE M. CHRISTENSEN
 4           MUNCK WILSON MANDALA, LLP
             12770 Coit Road
 5           Suite 600
             Dallas, Texas 75251
 6           Phone: (972) 628-3675
             E-mail: Mwilson@munckwilson.com
 7           E-mail: Jchristensen@munckwilson.com

 8

 9   FOR THE DEFENDANTS:

10           RYAN P. BATES
             BATES PLLC
11           3300 Harris Park Avenue
             Austin, Texas 78705
12           Phone: (512) 694-5268
             E-mail: Rbates@batespllc.com
13

14           BENTON WILLIAMS II
             BENTON WILLIAMS, PLLC
15           100 Crescent Court
             Suite 700
16           Dallas, Texas 75201
             Phone: (214) 785-6205
17           E-mail: Benton.williams@bentonwilliamspllc.com

18

19

20

21

22

23

24

25
```

1              C H R O N O L O G I C A L   I N D E X

2    **July 13, 2021**                                **PAGE**

3    Opening Remarks ...................................4

4    Court in Recess ..................................23

5    Reporter's Certificate ...........................24

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1              (P R O C E E D I N G S)

2              THE COURT:  The Court calls Southwest Airlines v.

3    Kiwi, 3:21-CV-98.  And I have looked at the parties' joint

4    status report to kind of get a feel for what's going on here,

5    and I wanted to let you know that I am still dealing with the

6    two pending motions.  I'm aware of those and I'm working on

7    those currently, so I hope to have some decisions out to you

8    very soon on that.  But let's talk about your joint status

9    report.

10             So I read your contentions and Kiwi's contentions,

11   and I'm aware of the -- the pending motions.  So let's start

12   with -- you guys are worlds apart on when this trial should

13   take place.  So talk to me -- we'll start with Plaintiff, and

14   then I'll hear from Defendant -- how long do you think you

15   need for discovery, everything to lead up to trial?

16             MR. WILSON:  Sure, Your Honor.  And this is Michael

17   Wilson at Munck Wilson.  This is Julie Christensen with me.

18   And I'm joined, on the phone any way, by in-house counsel at

19   Southwest, James Sheppard.

20             So in terms of the schedule, I have -- you know,

21   Southwest's position is it is partially dictated by the

22   injunction decision.  Kiwi's asked for a lot more time for

23   discovery.  And I think Southwest could, you know,

24   accommodate some of that additional time if they weren't

25   engaging in the hacking and reselling and the prohibited
```

1  activity during the pendency of the lawsuit.  So that's part

2  of the reason motivating a shorter time period for discovery.

3          But I think our position is, the legal and factual

4  issues in this case are pretty clear.  I mean, the injunction

5  papers lay out a lot of the facts.  Kiwi's asking for

6  14 months just to complete fact discovery.  We think that can

7  be done in probably five to six months.

8          And that's the main dispute, in terms of the

9  timing.  Because when you look at the other periods, like

10  the -- the time period needed for expert discovery, or the

11  time period needed from the conclusion of expert discovery

12  until the trial, those time periods are about the same in the

13  two parties' schedules.  We'd just ask for about five months

14  for fact discovery, and they've asked for 14.

15          So we think that six months -- given kind of the

16  well-laid-out issues in the injunction papers already, we

17  think that they can do fact discovery a lot quicker.  And

18  again, we'd be perfectly willing to build a little bit more

19  time in there if they weren't engaging in this activity

20  during the pendency of the lawsuit.

21          THE COURT:  Okay.  Understood.

22          So talk to me, Kiwi.  Why do you need to try this

23  case in 2023?

24          MR. BATES:  Yes, ma'am.  Ryan Bates for the

25  defendants, Kiwi.com, Inc., and SRO.  And Benton Williams

1    with me here from Dallas.

2              MR. WILLIAMS:  Good afternoon.

3              MR. BATES:  Your Honor, our proposal is based on

4    the actual course of events in the litigation that Southwest

5    itself engaged in against BoardFirst, which Southwest has

6    prominently cited as the most comparable case to the one that

7    we're doing here.

8              In BoardFirst, there was a period of 15 months

9    between the filing of the complaint and dispositive motions.

10             THE COURT:  Now, talk about -- let me chime in for

11   a second, and then you can talk some more.

12             Give me some idea of comparability, because I think

13   this is a pretty streamlined case, from the allegations.  I

14   note from your filing that you are not planning on adding --

15   or Plaintiff's not planning on adding any parties.  And so I

16   don't foresee, based on what you've filed so far, both sides,

17   that this case is going to become more complicated than it

18   already is.  So 2023, to me, sounds really long.

19             MR. BATES:  Okay.

20             THE COURT:  So talk to me about why you need that.

21   And if you're going to cite me to a comparable case, tell me

22   what kind of claims they had.

23             MR. BATES:  Well, the claims in BoardFirst are

24   pretty much in line with what Southwest has pleaded in this

25   case.  There were counterclaims in that case.  I don't -- I

1    apologize, I don't have the exact contours the counterclaims

2    that BoardFirst asserted.  But in this instance, SRO has not

3    answered, and we anticipate pleading counterclaims, which are

4    going to expand the scope of this suit.

5           They may include, as we -- excuse me, as we've

6    indicated in our contentions, that there are some competitive

7    issues going on here, which those are big expansions of what

8    this case is currently posturing as.

9           We've also got a significant degree of complication

10   from the fact that we have, principally, a foreign defense

11   team here.  Not the counsel, but Kiwi is headquartered in the

12   Czech Republic.  We have a nine-hour time zone differential

13   that -- I cannot overstate just how invasive that has been,

14   even in the period of time that we've had so far.

15          Just to give the Court one example.  Yesterday

16   afternoon, Southwest asked us to consent to their motion to

17   supplement the PI appendix.  They called us at 2:30 in the

18   afternoon.  If we had a U.S.-based client, we probably could

19   have gotten them an answer before they filed it this morning.

20   We were not able to.  And so they filed it indicating,

21   correctly, that, you know, they hadn't given us the time

22   needed and they needed to get it on file this morning.

23          So that -- that is not simply a problem that occurs

24   in specific instances; it's a problem that occurs and

25   compounds over time.  Because every single time that we have

1    to have a back-and-forth with our client on an issue or a

2    position or, heaven forbid, explaining details of the U.S.

3    legal system, which we've done a lot of, that back-and-forth

4    extends far longer than it does in any domestic case I've

5    ever had before.

6            THE COURT:  Let me chime in.  I appreciate that.

7    That being said, you are the one who chose to take on an

8    out-of-the-country client.  So, you know, I can see giving

9    you some latitude for that; I don't see that accounting for

10   almost a year difference in jury trial dates.

11           You know, I'm sorry your client is awake when

12   you're asleep, but you took that case.  So maybe you need to

13   have an attorney who wakes up at 9:00 p.m. to talk to your

14   client, I don't know.  But that is not moving me to give you

15   an extra year.

16           What else you got?

17           MR. BATES:  Understood, Your Honor.

18           Well, let me just refer the Court back to the

19   Court's -- to BoardFirst.  What we're talking about there is

20   breach of contract claims, I believe there was CFA claims;

21   I'm not a hundred percent sure, but the Texas ana -- the

22   State law analogue in that instance, fundamentally a great

23   deal of overlap there.

24           Again, we are six months into this case and have

25   not progressed to the stage where SRO is even on the clock

1    for answering yet.  Five months into BoardFirst, they -- they

2    were at the point of doing that, and then there were

3    15 months for dispositive motions.

4           I think that reality demonstrates that -- the

5    degree of factual development that this case is actually

6    going to warrant is larger than Southwest is representing to

7    you.

8           THE COURT:  Okay.

9           MR. BATES:  I don't believe that the injunction

10   papers or the preliminary injunction appendix do anything

11   like setting out the factual record that this Court is going

12   to need to make a decision in this case.

13          THE COURT:  Okay.

14          MR. WILSON:  Your Honor, can I respond briefly on

15   the BoardFirst issue?

16          THE COURT:  You may.  Sure, absolutely.

17          MR. WILSON:  Thank you.

18          So these cases are not comparable in terms of the

19   impact on Southwest.  BoardFirst was a company that was

20   selling, basically, priority boarding.  So they were scraping

21   information, similar to Kiwi, but they were selling priority

22   boarding.

23          This situation with Kiwi is bad, and it's getting

24   worse.  What Kiwi is doing is scraping data, hacking

25   Southwest's computers, reselling flights; and the situations

1   are getting worse.  Let me just give you an example of

2   something that happened last week.

3           We found out that a company called Skiplagged,

4   which is another online travel agent, is also publishing

5   Southwest flights and fares.  We sent them a notice, and they

6   responded, saying that they aren't getting the information

7   from Southwest.com.  And as it turns out, they are getting it

8   from Kiwi.

9           THE COURT:  Okay.

10          MR. WILSON:  And when we told them to stop, their

11  response was, they filed a lawsuit against Southwest in the

12  Southern District of New York.

13          And so now, because Kiwi won't stop, we are losing

14  control of our contact with customers, and we're having

15  parties that are claiming they aren't even subject to our

16  website terms.  And so the issue with Kiwi is going from bad

17  to worse.

18          And as the Court may know, if you've ever tried to

19  book flights on Southwest, Southwest does not allow companies

20  like KAYAK and Tripadvisor and Travelocity to book flights.

21  They keep control of that.  And all those reputable companies

22  follow the rules.  None of those companies publish Southwest

23  flights.  The only one that is doing it significantly is

24  Kiwi.

25          And as we've mentioned in the injunction paper,

1  this is a company that has an F rating with the Better

2  Business Bureau, has follow groups on Facebook and

3  Tripadvisor as a scam; got worse customer service awards.

4  This is not who Southwest wants to continue its brand with.

5  And it's causing serious problems for Southwest and its

6  brand, and that's the urgency for getting a decision.

7            We don't think they have good defenses, especially.

8  For example --

9            THE COURT:  I -- I kind of figured you wouldn't

10  think that.

11            MR. WILSON:  Yeah, I understand.  I -- I might --

12  I'm here for Southwest.  But, I mean, the contract defenses

13  are particularly weak, and we think that -- we want to get to

14  a final decision on this as soon as possible.

15            THE COURT:  Okay.

16            MR. BATES:  Your Honor --

17            THE COURT:  I'll hear you the last, Mr. Bates.

18            MR. BATES:  But I would just like to point out,

19  once again, that while Southwest is claiming that they have a

20  significant rush to need the Court to act in an expedited

21  fashion here, that's inconsistent with the facts that they've

22  put into their own pleading; which was their first C&D

23  letter, according to them, was sent to Kiwi in 2018.  And in

24  reality, their first C&D letter was sent to Kiwi.com's

25  predecessor in 2015.  It's 2021.

1          And they have sat on their hands for years and

2     years and years, and now are insisting that this is something

3     of -- you know, it's not existential, obviously, but in

4     reality, the harm that they're claiming we're doing is

5     indistinguishable from the type of harm that they claimed

6     with BoardFirst, which is we are denying them, according to

7     them, the opportunity to engage in ancillary sales of

8     services.

9          They are still getting all of their flight revenue,

10    and the harm here is no different from what they allege the

11    harm was in BoardFirst, which was, financially, we're not

12    able to make these ancillary sales, and reputationally, we're

13    being associated with somebody we don't want to be.

14         Well, our contentions on the matters are completely

15    the opposite.  Obviously we don't think that we have a

16    contract.  We don't think that we're violating it.  We don't

17    think the contract is enforceable, if it is.  All of those

18    things are to be determined here.  But the reality is, this

19    is a very comparable case to BoardFirst.  We think it

20    provides a clear template for a reasonable schedule for the

21    Court to set a trial date.

22         And we don't think that the issues relating to --

23    and I -- I have a long list of complexities that I could go

24    through with Your Honor.  I understand your point about, yes,

25    I could wake up earlier and be more overlapping in the time

```
 1    frame.  I don't think that that's a full answer with respect
 2    to the types of -- and I appreciate Your Honor saying already
 3    that you -- you have the understanding to grant us leeway on
 4    that, but there are a lot of complications out here, from
 5    COVID-related travel restrictions onward, that are making
 6    this a particularly difficult ability for Kiwi to get a fair
 7    day in court.
 8              We would submit that we should not set a trial
 9    schedule or discovery schedule that in some way risks having
10    a foreign defendant, whose employees work in a foreign
11    language, and who is being dragged into a foreign legal
12    system that it does not necessarily know anything about, at
13    an institutional level, that it causes them the possibility
14    of risking the opportunity to present a full and fair defense
15    of their actions.  And --
16              THE COURT:  Okay.  All right.  Well, I appreciate
17    both of your arguments on that.  I'm ready to rule on it.
18              I am going to go with the dates proposed by
19    Southwest.  If this case gets more complicated, I will be
20    happy to entertain a new -- a request to revise the
21    scheduling order.  And if it becomes as complicated as you
22    say, Counsel, I think that may be appropriate.
23              But for now, I'm going to stick with those
24    deadlines.  And if you-all will -- so I'll issue a scheduling
25    order that -- that mimics Page 8 of the joint statement with
```

 1    Southwest's proposal, but I --

 2              MR. BATES:  Your Honor, one thing we'd like to

 3    point out is that the dispositive motion to trial deadline

 4    schedule that they proposed doesn't actually comply with

 5    local Rule 56.2.  There is supposed to be at least 90 days

 6    from dispositive motions to trial, and they have less than 60

 7    proposed.

 8              THE COURT:  Well, I'm glad you pointed that out.

 9    And so we will expand that so that it's at least 90 days.

10              And, you-all, what I'm concerned about is the

11    ultimate jury trial date.  I'm going to give it to you -- if

12    you guys think you can work something out together, working

13    backwards, I won't do it for you.  If I do it for you, you're

14    probably not going to like the dates.

15              So if I -- if we go with a February 1st, 2022,

16    trial date, do you-all want to get together and see if you

17    can work out everything that comes in between, or do you need

18    me to rule?

19              MR. WILSON:  Well, Your Honor, I think that --

20              THE COURT:  I mean, I've already ruled, but -- take

21    a crack at it.

22              MR. WILSON:  -- and -- no.  I think that if you

23    gave us a trial date in early March, we could keep these

24    dates, what it looks like.

25              THE COURT:  Okay.

1          MR. WILLIAMS:  Your Honor, this is Benton Williams.

2     I apologize.  I realize I'm asking the Court for leave to

3     comment after the Court has already ruled, but --

4          THE COURT:  It's okay.

5          MR. WILLIAMS:  -- if I may.

6          THE COURT:  You may.

7          MR. WILLIAMS:  I'd like to make a comment on

8     Mr. Wilson's argument, as well as kind of follow up on

9     Mr. Bates' comment; which is, while Kiwi unsurprisingly

10    disagrees, respectfully, with certain positions of our

11    colleague on the other side, Mr. Wilson, we do feel that that

12    is principally the purpose of Rule 68 of injunction.  If

13    Mr. Wilson does, in fact, feel as strongly as he does; and we

14    certainly believe that he does, that's what injunction

15    motions and the briefing and the evidence is for, to stop any

16    alleged harm in advance of the trial date.

17         The question, Your Honor, that I feel is properly

18    before the Court, is how long did it fairly require to -- for

19    everyone to develop a case for trial.  And Mr. Bates

20    highlighted the proposed violation of the law, Rule 56.2,

21    with respect to dispositive motions, but -- but there are

22    others, and significantly so.

23         And this --

24         THE COURT:  Well, let me chime in for just a

25    second.

```
 1            MR. WILLIAMS:  Yes, Your Honor.

 2            THE COURT:  When you say there are others, are

 3   there other dates that are violative of local Rules?

 4            MR. WILLIAMS:  Not specifically, Your Honor, other

 5   than I believe that the -- the Daubert -- the Daubert --

 6   excuse me.

 7            THE COURT:  That's okay.

 8            MR. WILLIAMS:  The proposed Daubert motion deadline

 9   from Southwest is December 12th, which is fully briefed,

10   would allow the Court, I believe, by my math, less than --

11   less than 30 days prior to trial before it issues its ruling.

12   But kind of more broadly, we are being asked to try a case,

13   you know, in about five months.  And Southwest has

14   proposed --

15            THE COURT:  Well, now, let me talk to you about

16   that.  I'm not saying you have to go to trial in five months.

17   I don't think that's what I said.  Let me pull up our dates

18   and make sure we're looking at the same.

19            Is that six months?  Let me see.

20            MR. WILSON:  March.  That would be eight months.

21            THE COURT:  Okay.  All right.  Well, let me retract

22   my earlier ruling.  Why don't we set a date in April.  That

23   gives you a little something.  And I'm going to let you guys

24   work backwards from that.

25            So let's plan on -- get your calendars out -- let's
```

1   plan on April 4th as the jury trial date.  I'm going to leave

2   it to you to figure out the days that go backwards.

3          Counsel, I think you raised a good point with --

4   about the exigency.  That is kind of what the injunction's

5   all about.

6          I do recognize that, you know, it's hard to talk to

7   a client in a foreign time zone, and somebody that's not used

8   to the American justice system.  So I -- I do think I should

9   account for that, and so I'm going to --

10          MR. WILSON:  May I raise one issue, Your Honor?

11          THE COURT:  Yes.

12          MR. WILSON:  So I'm set for trial in the Central

13   District of California on April 18th, so I'll be in

14   Los Angeles the couple of weeks before that trial.

15          THE COURT:  When do you think that trial wraps?

16          MR. WILSON:  I think it will be complete in -- I

17   think it's going to be one to two weeks, but I could -- we

18   could still do this one in late March; March 21st or

19   March 28th are both Mondays.

20          THE COURT:  Are you guys free on March 21st or 28?

21   What does your schedule look like?

22          MR. WILLIAMS:  Your Honor, this is Benton Williams.

23   I  -- I don't believe that I'm unavailable on those dates,

24   but I would refer back to my discussion about -- principally,

25   about -- the discussion about answering the question, or the

1    issue before us, which is how long does it fairly require --

2    how long does it require to fairly prepare a case for trial.

3            And that goes back to our issue of -- you know,

4    we're not asking the Court, as we sit here, to rule in favor

5    of the proposal set forth in our joint report.  But if the

6    Court would allow us some time to develop our case for

7    trial -- we understand Southwest Airlines has been sending

8    cease and desist letters, and they are much more involved

9    with this case than 2015.

10           We're -- and we're not asking, you know, for

11   unreasonable delay, Your Honor, I believe.  But if we could

12   have some amount of time for fact discovery, some amount of

13   time -- which, in accordance with the plaintiff's proposal,

14   some amount of time that is more than just a couple weeks to

15   depose however many experts that Southwest is going to

16   disclose to us, and for an amount -- and during -- an amount

17   of time that is more than the couple weeks that we are being

18   afforded under the proposed trial schedule.  And then for

19   some amount of time to prepare our client and ourselves for

20   trial, to try this before, you know, mock juries, et cetera.

21           And we do believe, Your Honor, that Rule 68 was --

22   one of the many reasons it's there is to provide Mr. Wilson

23   with -- to accommodate the concerns that Mr. Wilson believes

24   exists.

25           As to whether the trial date should occur as

1   proposed by Southwest or not, I -- I do believe the issue is

2   how long it takes to prepare a case for trial.  And we would

3   ask that the Court give us more time to develop our case,

4   both in fact discovery and in expert discovery.

5           We do not know how many experts they are going to

6   disclose.  We do not know -- we will certainly be diligent

7   as -- beyond as diligent as we possibly can.  But without

8   knowing any experts that are going to be disclosed, to

9   proceed, you know, 15 -- or days to complete all of that; and

10  then after to complete that, get all of those transcripts to

11  determine -- to evaluate which Daubert motions should or

12  should not be filed, if any, to prepare this for trial, Your

13  Honor, we do believe requires more than just six months or

14  seven months from today.

15          And we would ask for a date that is more in line

16  with the Court's initial ruling a moment ago about April.

17  And if there are scheduling conflicts in April, Your Honor,

18  we would ask that the Court defer to providing us a little

19  bit more time to develop the case for trial.  So if -- if

20  Mr. Wilson is unavailable in April, we would ask that perhaps

21  the Court would look at dates in May.

22          THE COURT:  Okay.  So everybody look at May 2nd.

23          MR. WILSON:  I am set for Central District of

24  California April 18.  I'm set in a patent trial, Central

25  District of California, May 17.  I have a large trade secret

1    case in early July in Delaware that's going to be a two-week

2    trial, $100,000,000 case.

3              So April to July, for me, is really, really

4    difficult.  So if we don't get this trial set in March, my

5    conflicts are going to take us well into --

6              THE COURT:  Let's talk about March.  I am not

7    inclined to give you nearly as much time as you want, Kiwi.

8    So with that having been said, you have preserved your

9    objections and the reasons for it for appeal.  I won't be

10   offended.  I mean, if I get reversed, I get reversed.  I

11   don't think -- well, anyway, neither here nor there.

12             But what does your schedule look like in March,

13   everybody?

14             MR. BATES:  I believe we are available those two

15   weeks, Your Honor.  I am not aware at this time of any

16   conflicts among my co-counsel, but I would reserve because I

17   don't have their calendars.

18             THE COURT:  I understand.

19             MR. BATES:  There's a possibility that we may be

20   conflicted there, but at this time, I'm unaware of it.

21             THE COURT:  And when I am concerned about

22   conflicts, I'm really concerned about lead lawyers.  If it's,

23   you know, the third or fourth person on the brief, you can do

24   without.  So if --

25             MR. BATES:  Well, that -- respectfully, Your Honor,

1   that's us.

2          THE COURT:  Well, then you need --

3          MR. BATES:  Mr. McCarthy and Mr. Garber are both on

4   vacation today, I apologize.

5          THE COURT:  Well, you don't have to apologize, but

6   I can't -- if it wasn't important for them to get on this

7   call, I don't know that I need to consider their schedule.

8          MR. BATES:  I understand.

9          (Brief interruption.)

10          MR. BATES:  We were just pointing out that lead

11   counsel unfortunately is not available today, and I do not

12   have their calendars.  So to the extent that I'm aware of any

13   potential conflicts, there are none.  And I hope that we will

14   determine from their calendar that I'm correct in making that

15   representation to the Court.

16          THE COURT:  Well, if lead counsel turns out to have

17   another case that they're going to be lead counsel in, let me

18   know and we may need to change.  But let's plan on -- how

19   about March 28th.

20          That doesn't step on your shoes; is that right,

21   Plaintiff?

22          MR. WILSON:  Yes, Your Honor.  I can do that.

23   Thank you very much.

24          THE COURT:  March 28th.  And then I want you guys

25   to work together, and gals, to work backwards.  Because most

 1   of your dates are very similar, so make sure they don't

 2   violate the local Rule.  But if you-all will work on that.

 3          Send me an updated joint status report.  It doesn't

 4   need to be fancy; it just needs to give me the days you want.

 5   So let's work backwards from that.

 6          And I do say with sincerity, Defense Counsel,

 7   I've been in patent trials that started out very clean, and

 8   then you get all the counterclaims and it just turns into

 9   this big ball of everything.  And so I -- I do know that can

10   happen.  And if that happens in this case, I am certainly

11   willing to entertain changing the scheduling order.

12          So if it turns out to be a mess, and everybody

13   needs more time, I want both sides to have time to fully

14   flesh this out, while balancing the need to keep the Court's

15   docket going in a timely way.

16          MR. WILLIAMS:  Yes, Your Honor.

17          MR. BATES:  Yes, Your Honor.

18          THE COURT:  So feel free to re-urge it, if

19   necessary.

20          MR. WILLIAMS:  Yes, Your Honor.  Thank you.

21          THE COURT:  Anything else you-all need from me

22   today, other than to hurry up and rule on your pending

23   motions, which I'll work on?

24          MR. BATES:  Not on behalf of Kiwi, ma'am.

25          THE COURT:  All right.  Fantastic.

1              Well, thank you, everybody, for joining me today.

2    Excellent advocacy, and it made a difference.

3              So you are court ordered to not get any viruses,

4    and no calories count today.  So have a great day, and I look

5    forward to seeing you guys in person.

6              (End of proceedings.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              I, BROOKE N. BARR, United States Court Reporter for

2    the United States District Court in and for the Northern

3    District of Texas, Dallas Division, hereby certify that the

4    above and foregoing contains a true and correct transcription

5    of all proceedings in the above-styled and -numbered cause.

6

7              WITNESS MY OFFICIAL HAND this the 5th of

8    August, 2021.

9                              /S/ BROOKE N. BARR
                               BROOKE N. BARR, CSR NO. 6521
10                             CSR Expiration Date:  12/31/21
                               United States Court Reporter
11                             1100 Commerce Street
                               Room 1376
12                             Dallas, Texas 75252
                               (214) 753-2661
13

14

15

16

17

18

19

20

21

22

23

24

25