**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| SOUTHWEST AIRLINES CO., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Case No. 3:21-cv-00098 |
| | § | |
| KIWI.COM, INC., and KIWI.COM | § | |
| S.R.O., | § | |
| | § | |
| *Defendants*. | § | |

**NOTICE OF INTENTION TO TAKE THE DEPOSITION OF CORPORATE**
**REPRESENTATIVE OF SOUTHWEST AIRLINES CO.**

Please take notice that Defendants Kiwi.com, Inc. and Kiwi.com s.r.o. ("Kiwi.com" or

Defendants") intend to take the oral deposition of the corporate representative(s) of Plaintiff

Southwest Airlines Co. on Monday, October 25, 2021 beginning at 9:00 a.m., or such other date

to which the parties may agree, including any date prior to the close of fact discovery pursuant to

the Court's Scheduling Order (ECF No. 80), and continuing thereafter until completed, at the

offices of Munck Wilson Mandala, LLP, 600 Banner Place Tower, 12770 Coit Road, Dallas, Texas

75251. Pursuant to Federal Rule of Civil Procedure 30(b)(6), the matters for examination are set

forth in **Exhibit A**. The deposition will be stenographically recorded by a certified court reporter,

and may be videotaped.

Dated: October 1, 2021                    Respectfully submitted,

                                          */s/ Alex More*
                                          Kieran McCarthy (*admitted pro hac vice*)
                                          Colorado Bar No. 37933
                                          Asa Garber (*admitted pro hac vice*)
                                          Colorado Bar No. 48256
                                          MCCARTHY GARBER LAW, LLC
                                          501 S. Cherry Street #1100
                                          Denver, Colorado 80246
                                          (720) 504-5294
                                          kieran@mccarthygarberlaw.com
                                          asa@mccarthygarberlaw.com

                                          Ryan P. Bates
                                          Texas Bar No. 24055152
                                          BATES PLLC
                                          919 Congress Avenue, Suite 1305
                                          Austin, Texas 78701
                                          (512) 694-5268
                                          rbates@batespllc.com

                                          Alex More
                                          Texas Bar No. 24065789
                                          Monica Gaudioso
                                          Texas Bar No. 24084570
                                          CARRINGTON, COLEMAN,
                                          SLOMAN & BLUMENTHAL, L.L.P.
                                          901 Main St., Ste. 5500
                                          Dallas, TX 75202
                                          214-855-3053
                                          amore@ccsb.com

                                          *Attorneys for Defendants*
                                          *Kiwi.com, Inc. and Kiwi.com s.r.o.*

## CERTIFICATE OF SERVICE

I hereby certify that, on October 1, 2021, I served a copy of the foregoing Notice of Intention to Take the Deposition Of Corporate Representative of Southwest Airlines Co. on the attorneys of record for all parties by email and mail to the address below, including the following counsel:

Michael C. Wilson
S. Wallace Dunwoody
Amanda K. Greenspon
Julie M. Christensen
MUNCK WILSON MANDALA, LLP
12770 Coit Road, Suite 600
Dallas, Texas 75251
mwilson@munckwilson.com
wdunwoody@munckwilson.com
agreenspon@munckwilson.com
jchristensen@munckwilson.com

*Counsel for Plaintiff Southwest Airlines Co.*

*/s/ Monica Gaudioso*
Monica Gaudioso

APP. 3

## EXHIBIT A

## <u>DEFINITIONS</u>

The following terms and definitions shall apply:

1.      The terms "**You**," "**Your**," "**Yours**," "**Plaintiff**," and "**Southwest**" refer to Plaintiff Southwest Airlines Co., and include all affiliate business entities and the agents, employees, officers, directors, representatives, attorneys, and all other persons acting on behalf of, or who are subject to the direction or control of Southwest Airlines Co.

2.      The term "**Kiwi.com**" or "**Defendants**" refers to Defendant Kiwi.com, Inc., Defendant Kiwi.com s.r.o., and includes all affiliate business entities and the agents, employees, officers, directors, representatives, attorneys, and all other persons acting on behalf of, or who are subject to the direction or control of Kiwi.com.

3.      The term "**Southwest.com**" refers to (i) Southwest's public-facing website located at http://www.southwest.com; all publicly accessible pages and URLs within the southwest.com domain, including any subdomains; and all publicly accessible pages and URLs within the swabiz.com domain, including any subdomains; (ii) any application programming interface ("API") supporting or enabling queries or transactions regarding flights, fares, or bookings via Southwest's public-facing website or Southwest's mobile apps; (iii) any computer system, whether or not owned or operated by Southwest, on which any of those information resources are hosted or served; and (iv) and any electronic, magnetic, optical, electrochemical, or other high-speed data processing device, whether or not owned or operated by Southwest, performing logical, arithmetic, or storage functions in connection with any of those information resources, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device.

4.      The term "**Southwest Marks**" refers to Southwest's registered trademarks as defined and outlined in Plaintiff's complaint.

5.      The term "**Southwest Services**" refers to all Southwest flights, airfares, and

4

ancillary services, such as baggage fees, upgrades, meals, and any other amounts paid to Southwest directly or indirectly from persons that fly on Southwest.

6.      The term **"OTAs"** means online services that offer, list prices for, provide searchable flight data or fare data related to airlines, provide flight data or flight information related to airlines, provide price-comparison services related to airlines, provide information-related services related to airlines, or broker tickets or services of airlines or other travel carriers.

7.      "**Terms and Conditions**" means the contents of the web page located as of August 3, 2021 at the URL "https://www.southwest.com/html/about-southwest/terms-and-conditions/index.html?clk=GFOOTER-BOTTOM-TC," the document linked to the hyperlink labeled "Terms and Conditions" on Southwest.com, any document referred to as a Terms and Conditions agreement in its cease and desist letters to Kiwi.com, as well as any predecessor agreements.

8.      The term "**document**" or "**documents**" is defined to be synonymous in meaning and equal in scope to the usage of this term in Fed. R. Civ. P. 34(a), and specifically includes electronically-stored information including writings, drawings, graphs, charts, photographs, sound recordings, images, computerized databases, and other data or data compilations stored in any medium from which information can be obtained, but excluding emails, voicemails, and other forms of ESI excluded from discovery as provided by the Court's Order Regarding E-Discovery, ECF No. 71. A draft or non- identical copy of a document is a separate document within the meaning of this term.

9.      The term "**communication**" or "**communications**" means oral, written, and electronic messages exchanged among persons including letters, faxes, notes, chat messages and threads (such as Teams, Slack, and Google Chat), and memoranda, but excluding emails, voicemails, and other forms of ESI excluded from discovery as provided by the Court's Order Regarding E-Discovery, ECF No. 71.

1. The reasons for Southwest's decision to maintain the exclusive online distribution rights to sell Southwest tickets or other Southwest Services to the general public through the Southwest.com without allowing OTAs to sell Southwest flights or other Southwest Services without express written approval.

2. Southwest's intent and understanding of its Terms and Conditions for use of Southwest.com.

3. The alleged unlawful activity of Kiwi.com on Southwest.com.

4. Kiwi.com's alleged access of Southwest.com without authorization from Southwest, including the specific application programming interface ("API") and any other specific components of Southwest.com that Southwest contends Kiwi.com is accessing without authorization.

5. Kiwi.com's alleged unauthorized scraping of flight and pricing data from Southwest.com.

6. Kiwi.com's alleged selling of Southwest Services without approval from Southwest that Southwest maintains constitutes unauthorized commercial activity.

7. Kiwi.com's alleged charging of service fees that are not otherwise charged by Southwest.

8. The instances of actual and possible confusion, mistake, deception, association, or dilution of any kind that Southwest claims is a result of Kiwi.com's reproduction of the Southwest Marks.

9. When and how Southwest first learned that Skypicker and Kiwi.com brokered flights or Southwest Services, and how Southwest monitors the brokering of flights or Southwest Services through Kiwi.com.

10. Cease-and-desist demands sent by Southwest to Kiwi.com and other OTAs regarding use of the Southwest.com.

11. Kiwi.com's alleged unfair and deceptive practices including (i) selling Southwest flights without permission; (ii) failing to identify the carrier when advertising Southwest flights; (iii) adding its own service fees to the price of Southwest flights; (iv) misrepresenting Southwest's policies in an effort to bilk customers into purchasing ancillary services from Kiwi.com; and (v) failing to issue refunds to customers for cancellations or other issues on Southwest flights.

12. Kiwi.com's alleged promotion and offering of "hidden city" tickets and the alleged negative impact on Southwest's operations, including flight delays.

13. Southwest's current and historical company policies, protocols, procedures, directions or instructions regarding "hidden city" flights.

6

APP. 6

14. Kiwi.com's alleged misrepresentations of Southwest's policies and charges to customers for things that are free on the Southwest.com.

15. Southwest's reasons for refusing to form a business relationship with Kiwi.com.

16. Southwest employee reports and customer complaints about alleged problems and challenges presented by tickets purchased through Kiwi.com.

17. Southwest's security systems intended to block automated traffic and bots from using the Southwest.com.

18. Southwest's security, self-help, or other access-restricting measures implemented in an effort to stop Kiwi.com's alleged activities, including Southwest's various "Bot Block" measures.

19. Southwest's attempts to address automated traffic, bots, scraping, data harvesting, data crawling, spiders, rotating proxies, residential proxies, and API access on Southwest.com.

20. Kiwi.com's alleged efforts to continue to hack Southwest.com in circumvention of Southwest's security measures.

21. Kiwi.com's alleged improper acquisition of Southwest flight and fare data from third parties.

22. The physical, geographical location of Southwest's computer servers owned, leased, or operated in whole or in part by Southwest, and Southwest's decision to outsource any aspect of its network architecture or computer servers or systems.

23. Southwest.com's network architecture, enterprise architecture, solution architecture, and technical architecture.

24. Southwest's understanding of what conduct constitutes acceptance of its Terms and Conditions.

25. The time, money, and effort Southwest spends advertising and promoting its products and services using the Southwest Marks throughout the United States, and the goodwill Southwest alleges with respect to the Southwest Marks.

26. Southwest's revenue, costs, income, profits, debts, assets, and liabilities from January 1, 2017 through the present related to Southwest Services that Southwest claims were brokered by Kiwi.com.

27. Any market studies, reports, analyses, or presentations relating to Southwest's decisions to prevent Kiwi.com, other OTAs, or other third parties from brokering Southwest Services, including anything describing the advantages or disadvantages of Kiwi.com or OTAs brokering or not brokering Southwest Services.

28. Agreements between Southwest and any company, GDS company, ARC travel agency, online travel agency, or travel service provider whom Southwest permits to access, distribute information, or republish Southwest flight and fare data, or whom Southwest permits to broker the sale of Southwest Services.

29. Each third party GDS company, ARC travel agency, or other entity with which Southwest has a contractual relationship that Southwest claims Kiwi.com caused to breach their contractual obligations with Southwest, the contractual provisions Southwest claims were breached, Southwest's communications with such parties, and the circumstances surrounding such alleged breaches.

30. The specific monetary damages Southwest claims it suffered because of Kiwi.com publishing Southwest's flight and fare data and Kiwi.com brokering Southwest Services from January 1, 2017 through the present.

31. The specific monetary damages suffered by Southwest as a result of each instance of actual and possible confusion, mistake, deception, association, or dilution of any kind that Southwest claims is a result of Kiwi.com's reproduction of the Southwest Marks.

32. The specific monetary damages suffered by Southwest as a result of each instance where Southwest claims Kiwi.com interfered with its contractual relationship with any GDS company, ARC travel agency, or other entity with which Southwest has a contractual relationship.

33. All other damages allegedly caused by Kiwi.com's unlawful conduct to Southwest.

34. Settlement agreements, consent agreements, or letters of consent between Southwest and other travel carriers or OTAs related to the sale of Southwest Services.

35. Communications between Southwest and Kiwi.com.

36. Meetings and communications among any of Southwest's employees, directors, officers, investors, and shareholders in which Kiwi.com was discussed.

37. Internal communications discussing Kiwi.com, including any communications discussing or relating to whether Kiwi.com brings customers to Southwest that might not have otherwise flown with Southwest.

38. Claims, charges, allegations, arbitrations, lawsuits, litigation, or proceedings brought by Southwest against any party allegedly scraping or harvesting information relating to the sale of Southwest Services, including the status of such proceedings.

39. Southwest's collection and production of documents in this lawsuit, including relating to the topics above.

40. Southwest's pleadings, discovery responses, document productions, claims, and allegations in this lawsuit.

APP. 9